**Alberto VALDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 70439.**

Court of Criminal Appeals of Texas, En Banc.

May 24, 1989.

Rehearing Denied Sept. 13, 1989.

Carl E. Lewis, Corpus Christi, for appellant.

Grant Jones, Dist. Atty., Corpus Christi and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CAMPBELL, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, § 19.03(a)(1). The appellant was convicted of intentionally and knowingly causing the death of Joseph Bock, a peace officer acting in the lawful discharge of an official duty, by shooting him with a firearm. Af-

ter finding appellant guilty of the offense of capital murder, the jury returned affirmative findings to the special issues under Article 37.071, V.A.C.C.P. Punishment was assessed at death.

Appellant raises seven points of error. He challenges: the sufficiency of the evidence to sustain a guilty verdict; the sufficiency of the evidence to support an affirmative finding to the special punishment issue number two; the admission of evidence at the guilt/innocence phase of the trial that appellant was on federal parole; the admission of evidence at the guilt/innocence phase of the trial that a warrant had been issued for appellant's arrest due to parole violations; the admissibility of certain courtroom demonstrations; the admission of a bloodsoaked shirt worn by the deceased; and an alleged violation of the "rule".

In point of error number one, appellant contends there is insufficient evidence to sustain his conviction. We will set out the relevant facts.

On September 9, 1987, Sergeant J.D. Bock of the Corpus Christi Police Department stopped Carlos Luna for speeding and issued him a traffic citation. Albert Perez was parked behind Bock's patrol car when he observed a large beige car pass them at a high rate of speed. Perez saw only one occupant in the car. Bock yelled for the driver of the beige car to "pull it over." When the driver failed to stop, Bock returned to his patrol car, turned on the lights and siren, and began to chase the beige vehicle. Other police vehicles attempted to assist in the chase, but no one was successful in stopping the beige vehicle until it blew a tire. Bock made one final radio transmission stating that the suspect vehicle had been stopped.

Jerry Lee Wittner testified that he was driving a pickup truck when he saw a beige car pass him at a high rate of speed with a police car in pursuit. Wittner continued to follow the police car for three or four miles until he lost sight of it for approximately 30 seconds. When he next saw the vehicles, they were both stopped. Wittner stopped his truck behind the police car and saw the beige car parked in front of the police car. The officer and the suspect were wrestling when Wittner heard a shot and saw the officer bend over and fall down. Wittner ran back to his truck and heard another shot as he was getting into his truck. As he was driving off, a third shot came through the back window of his truck and lodged in the frame of the front windshield. He heard two more shots as he was driving away. Wittner identified appellant as the man he saw scuffling with Officer Bock. Wittner stated that he did not see another individual in the suspect's car.

Michael White, a motorcycle officer with the Corpus Christi Police Department, testified that he was the first to arrive at Officer Bock's patrol car after the shooting. He observed a beige colored car leaving the area. White found Officer Bock lying face down beside his car. White was unable to locate Bock's pulse.

Sergeant Salinas of the Corpus Christi Police Department heard a radio broadcast about a high speed chase and an officer being shot. The broadcast gave a description of a beige vehicle that was involved in the chase. Salinas drove in the direction of the chase and observed a beige vehicle approaching at a high rate of speed. Salinas positioned his patrol car halfway across the street and turned on his overhead lights in an attempt to stop the approaching vehicle. Salinas noticed that the left front tire had blown out. The driver was waving a gun out the window and fired at Salinas as he passed by. Salinas returned the fire but was unable to stop the car. Salinas then gave chase and followed the vehicle down an isolated country road. The car turned into the driveway of a small farmhouse. The driver of the vehicle got out of the car and ran into the farmhouse.

Eddie Mills testified that he was the owner of the farmhouse and on the date of this offense he heard someone drive down his drive way. He heard someone jerk his locked screen door open and observed the appellant in his living room. Appellant told Mills that he was being chased by the police and needed help. Mills became

frightened and ran out the front door of his house where he was met by Salinas.

After an intensive manhunt, appellant was discovered lying in a grassy area of a field behind the farmhouse. Officer Bock's service revolver was found inside the farmhouse underneath the cushions of a sofa.

Dr. Joseph Rupp, the Nueces County Medical Examiner, testified that he performed an autopsy on the body of Officer Bock and found that he died as a result of multiple gunshot wounds. Bock sustained two gunshot wounds to the thoracic area and two gunshot wounds to the head. Rupp recovered two bullets from the chest area, but testified that both bullets from the head wounds had exited the head. Rupp testified that both head wounds were immediately fatal.

A ballistics expert testified that he examined the two bullets taken from Bock's body and two bullets recovered near the body at the scene and determined that all four bullets had been fired from Bock's service revolver.

A search of the beige vehicle revealed various items which were identified as having been taken in several local burglaries.

Appellant testified in his own behalf and admitted that he was the driver of the beige vehicle and that he was present when the officer was killed. The appellant denied killing Bock, but rather stated that his passenger, a man known only to him as "Chico", had actually fired the shots that killed Officer Bock. Appellant stated that he met Chico on the morning of the murder and the two of them had gone to Kingsville to consummate a supposed drug deal. Upon their return to Corpus Christi, they spotted the police officer and attempted to flee. Appellant admitted that on the date of this offense he was on parole and knew that there was an outstanding warrant for his arrest. Appellant was carrying a .25 caliber pistol, an act he knew to be against the law and a violation of his parole. Appellant testified that he did not stop when the officer attempted to pull him over be-

cause he thought he could get away. Appellant eventually stopped when his front tire blew out. Appellant testified that as the officer was attempting to handcuff and control him, Chico, standing at the rear of the beige car, fired the shots which killed Bock. Appellant stated that after the officer had been shot, he fled the scene leaving Chico behind.

■ Appellant contends that the evidence is insufficient because there was no evidence to show that appellant shot Officer Bock with a firearm, an essential element alleged in the indictment.[1] Wittner testified that during the scuffle between appellant and Bock, he did not see a weapon and was unable to see who fired the shots.

While there was no direct evidence linking appellant to the weapon which was used to kill Officer Bock, there was sufficient circumstantial evidence. The evidence shows that: appellant and Bock were wrestling when shots were fired; Bock was fatally wounded by his own service revolver; appellant fled the scene and, following a chase, was observed entering a small farmhouse; and Bock's service revolver was subsequently discovered underneath the cushions of a sofa in the farmhouse.

This Court will not determine whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but rather will determine, after reviewing the evidence in the light most favorable to the jury's verdict, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State,* 769 S.W.2d 234 (Tex.Cr.App. 1989).

■ Traditionally, this Court has applied the outstanding reasonable hypothesis test when judging the sufficiency of the evidence in "circumstantial evidence" cases. This Court has held that the reasonable hypothesis analysis is not a separate standard of review, but is merely a different

---

1. The court gave no instruction to the jury regarding the law of parties. Neither appellant nor the State made requests for such an instruction.

formulation of the normal standard of review set out in *Jackson,* supra; *County v. State* (Tex.Cr.App. 69,793 delivered March 29, 1989). In other words, if the evidence supports a reasonable inference other than appellant's guilt, a finding of guilt beyond a reasonable doubt is not rational. *County,* supra slip op at page 5.

In the instant case, appellant claims that Chico shot Bock with a .38 caliber pistol. Appellant, upon seeing Bock fall, became panicked and fled the scene leaving Chico. Before appellant left, Chico removed several packages from the back seat alleged to contain a controlled substance. Officer White arrived at the scene almost immediately after the shooting and observed the suspect's vehicle leaving the area. Officer White did not observe either Chico or his packages in the immediate vicinity. Further, the ballistics proved that Bock was killed with his own weapon, a .357 revolver. This weapon was located in the farmhouse, to which appellant fled, some distance away from the shooting. We conclude that the evidence does not support a reasonable inference other than appellant's guilt. Therefore, a rational trier of fact could have found the essential elements of capital murder beyond a reasonable doubt.

The evidence is sufficient to show that appellant committed capital murder as alleged in the indictment. Appellant's point of error number one is overruled.

In point of error number two, appellant complains that he was denied due process as guaranteed by the United States Constitution and by the Constitution of the State of Texas [2] in that he was sentenced to death without there being sufficient evidence to show beyond a reasonable doubt

that he would be a continuing threat to society.[3]

In determining the merit of appellant's contention, we use the same standard of review set forth in our disposition of the preceding point of error—whether the evidence, when viewed in the light most favorable to the verdict, would lead any rational trier of fact to make the finding beyond a reasonable doubt. See *Burns v. State,* 761 S.W.2d 353 (Tex.Cr.App.1988); *Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Cr.App.1987) and cases cited therein.

The jury is permitted to consider many factors when determining whether the defendant will pose a continuing threat to society. These factors include, but are not limited to:

1. the circumstances of the capital offense, including the defendant's state of mind and whether he was working alone or with other parties;

2. the calculated nature of the defendant's acts;

3. the forethought and deliberateness exhibited by the crime's execution;

4. the existence of a prior criminal record, and the severity of the prior crimes;

5. the defendant's age and personal circumstances at the time of the offense;

6. whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;

7. psychiatric evidence; and

8. character evidence.

*Keeton,* supra at 61; see also cases cited therein.

■ At the penalty stage of trial, the jury may consider all of the evidence ad-

---

2. In his brief, appellant requests that we review this point of error in light of both state and federal constitutional safeguards. We will not address appellant's state constitutional claim because of the multifarious nature of his argument. See *McCambridge v. State,* 712 S.W.2d 499, 501 n. 9 (Tex.Cr.App.1986).

3. Article 37.071(b) provides that:
   On conclusion of the presentation of the evidence, the court shall submit the following ... issues to the jury:

   (1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

   (2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society.

   We note that special issue number three was neither raised by the evidence nor presented to the jury.

duced at the guilt stage. *Santana v. State*, 714 S.W.2d 1, 8 (Tex.Cr.App.1986). The calculated nature of defendant's act and the forethought with which he coldly planned and executed his crime is probative of his propensity to commit future acts of violence. *O'Bryan v. State*, 591 S.W.2d 464 (Tex.Cr.App.1979). The circumstances of the offense itself, if severe enough, can be sufficient to sustain an affirmative finding to the second special issue. *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Cr.App. 1986), cert. denied 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779; *Moreno v. State*, 721 S.W.2d 295, 302 (Tex.Cr.App.1986).

The evidence in the instant case shows that on the day of the murder appellant had been to Kingsville to purchase two packages wrapped in plastic and paper bag from "Shorty" for $18,500.00. Appellant denied that he knew what was in the packages, but conceded that it could have been marijuana or some other controlled substance. Further, at the time of appellant's arrest, appellant had in his car and on his person property from four recent residential burglaries. Appellant was on parole at the time of this offense and a warrant had been issued for his arrest due to violations of his parole.

Appellant attempted to evade the police by engaging in a high speed chase in an urban area. During the course of the chase he not only shot and killed Officer Bock, but shot at Jerry Wittner and Sergeant Salinas. Consequently, it is patently obvious appellant was in the course of a crime spree at the time Officer Bock attempted to stop him. In order to preclude apprehension, appellant killed Officer Bock in a cold-blooded, deliberate manner by shooting him twice in the chest at close range and twice in the head.

■ A defendant's prior criminal record is also relevant to future dangerousness. *Keeton*, supra at 61; *Brasfield v. State*, 600 S.W.2d 288, 293 n. 3 (Tex.Cr.App.1980) (overruled on other grounds). Appellant had previously been convicted of, and served "pen time" for, five felony offenses.

These offenses ranged in severity from theft to burglary of a habitation. Additionally, appellant confessed to two burglary offenses that had not resulted in final convictions. The evidence is clearly sufficient to support the inference that appellant was a career criminal who would do anything necessary to avoid apprehension.

In sum, the evidence as reflected by appellant's extensive criminal record, the severity of the circumstances of the present offense and his continuing criminal conduct is sufficient to support the jury's affirmative finding that there is a probability that appellant would constitute a continuing threat to society. Appellant's second point of error is overruled.

■ In points of error numbers five and six appellant complains that the trial court erred in admitting evidence, at the guilt-innocence phase of the trial, that appellant was on federal parole and a warrant had been issued for his arrest due to parole violations. In a hearing outside the presence of the jury, Sylvia Recio, a federal parole officer, testified that appellant had been on parole from a federal correctional institution and was assigned to her supervision. On September 22, 1986, a parole warrant was issued upon Ms. Recio's request as a result of appellant's violations of the conditions of his parole.[4] Ms. Recio further testified that she had informed appellant on September 30, 1986, of the outstanding warrant and instructed him to turn himself in. Appellant objected to the admission of this testimony on the basis of hearsay as to the existence of the warrant. The trial court overruled appellant's objection.

Ms. Recio substantially testified before the jury as she had done outside the presence of the jury. In the presence of the jury, appellant altered his objection from that of a hearsay basis to that based on admission of an improper extraneous offense. This objection was overruled.

Appellant testified at the guilt-innocence phase of trial. During cross-examination,

---

4. Ms. Recio testified that the United States Parole Commission is the agency that has the authority to issue arrest warrants for federal parole violators.

appellant admitted that he was on federal parole and knew that he had an outstanding warrant for parole violations. Appellant acknowledged that he carried several false driver's licenses to avoid apprehension in the event he was stopped by the police. Appellant further testified that he knew he was in violation of his parole by carrying a firearm when Officer Bock attempted to stop him.

In its charge to the jury, the court instructed the jury that it could consider the evidence of extraneous offenses only for the purpose of determining the motive of appellant. The appellant offered no objection to the instruction.

This Court has repeatedly stressed that an accused shall not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1972). As a general rule evidence of extraneous offenses is inadmissible; however, several exceptions to the general rule exists. *Yarbrough v. State*, 617 S.W.2d 221, 224 (Tex.Cr.App. 1981). Evidence of an extraneous offense which shows an accused's motive or intent is admissible if it is material and its relevancy to a material issue outweighs its prejudicial potential. *Porter v. State*, 623 S.W.2d 374, 385 (Tex.Cr.App.1981).

Evidence of motive is one kind of evidence aiding in establishing proof of the primary offense. *Rodriguez v. State*, 486 S.W.2d 355, 358 (Tex.Cr.App.1972). Thus, the prosecution may offer evidence to show motive for the commission of an offense because it is relevant as a circumstance to prove the commission of the offense. Of course, the testimony must fairly tend to raise an inference in favor of the existence of a motive on the part of the accused to commit the primary offense. *Rodriguez*, supra at 358.

The evidence in this case reveals that appellant was on federal parole and knew that a warrant for his arrest was outstanding. In seeking to avoid apprehension, he obtained several fraudulent driver's licenses. It is apparent that the evidence of appellant's parole and his knowledge of the outstanding warrant created an inference that appellant's motive in shooting Officer Bock was to avoid apprehension. Therefore, it was not error to admit evidence of appellant's parole and subsequent warrant for the purpose of showing motive. *Porter*, supra at 386. Points of error numbers five and six are overruled.

■ In point of error number three appellant contends that he was denied due process when the trial court permitted the State to make physical demonstrations, before the jury, of disarming techniques by which a person might take a police officer's weapon. Outside the presence of the jury, the State indicated its intention to offer demonstrations of six disarming techniques. Appellant objected to the demonstrations on the grounds that they were prejudicial in that there was no evidence to support the State's claim that this defendant had used one of the techniques to obtain Officer Bock's weapon. The trial court overruled the objections and permitted the jury to view the demonstrations.

Officer Jessie Garcia testified that he was familiar with commonly known methods of disarming police officers. With the assistance of another officer he demonstrated six of those techniques to the jury. Each of the six techniques involved physical contact between the two officers and the result of each demonstration was that the "suspect" took the officer's gun and "shot" him with it.

The trial court has discretion whether to admit or exclude experiments, and the measure of our review of such concerns whether he abused his discretion. *Ginther v. State*, 672 S.W.2d 475, 477 (Tex.Cr.App. 1984). In *Esquivel v. State*, 595 S.W.2d 516, 529 (Tex.Cr.App.1980), we stated that generally the results of out-of-court experiments are admissible in the discretion of the trial court if the experiment was made under similar conditions to the event to which the results of the experiment relate. To be admissible, an experiment need not be made under identical conditions of the event; dissimilarities go to the weight and not the admissibility.

In *Aliff v. State*, 627 S.W.2d 166, 177 (Tex.Cr.App.1982), this Court held that the trial court properly admitted evidence of a

police officer's experiment with his automobile one week after the alleged commission of the offense by the defendant. The officer testified concerning the speed he drove, the sequence and timing of the traffic signal lights, and the distances from various pertinent points on the road where his vehicle was located in conjunction with the changes in the traffic signal lights. A city traffic engineer testified that the timing sequence of the traffic signal was the same on the day of the officer's experiment and the day of the collision and the offense in question.

The evidence in the instant case demonstrated that appellant and Officer Bock were alone at the scene of the murder. Appellant was involved in a struggle with Officer Bock at the time gun shots were heard. Officer Bock fell down after the shots were fired. Appellant tried to escape in a beige Buick which he abandoned at a nearby farmhouse. Appellant entered the farmhouse and ran out the back door. Officer Bock's gun was found under sofa cushions in the farmhouse. Officer Bock was killed by shots that were fired from his own weapon. There was sufficient evidence to infer a possibility that during the struggle, appellant was able to disarm the officer and use his weapon to kill him. We hold that the trial court did not abuse its discretion in allowing the demonstration to be presented to the jury. Appellant's point of error number three is overruled.

■ In point of error number four, appellant contends that the trial court erred in admitting into evidence, over objection, the bloodsoaked shirt worn by Officer Bock at the time of his murder.[5] Appellant contends that it was error to admit the shirt into evidence because it had little probative value since it was cumulative of other evidence tending to show that appellant knew Officer Bock was a police officer. He further alleges it was unfairly prejudicial. Appellant also argues that, by his own testimony, he admitted he recognized Officer Bock as a police officer and therefore

the shirt was not admitted "to solve any question or bring light to any other issue other than the questions whether or not the Appellant should have recognized that Sergeant Bock was a Police Officer."

In *Bradford v. State*, 608 S.W.2d 918, 921 (Tex.Cr.App.1980), this Court overruled a number of earlier cases which held that it was necessary for bloody clothing to solve some disputed issue before it was admissible. If a verbal description of the victim's body, clothing, and scene of the offense is admissible then the victim's clothing, even though bloodstained, is likewise admissible. *Bradford,* supra at 920. The shirt in the instant case gave a descriptive insight into the location and the nature of the wounds suffered by Officer Bock. Since a description of the wounds and the scene of the offense was admissible to throw light on the offense and reveal its general nature, the shirt was also admissible. Therefore, the trial court did not err in admitting the shirt into evidence. Point of error number four is overruled.

■ In point of error number seven, appellant contends that the trial court abused its discretion in permitting a witness, who was present in the courtroom and heard the testimony of other witnesses, to testify in violation of Tex.R.Crim.Evid. 613.[6]

Pursuant to appellant's request, the trial court invoked the "rule" prior to the commencement of testimony. After conclusion of the State's case in chief, appellant called Carlos Luna as a witness. Mr. Luna testified that on the date of the offense Officer Bock was writing him a speeding ticket when Luna observed two people, whom he thought were women, drive by in a tan colored car. As the car passed, one of the occupants yelled something at Officer Bock. After Officer Bock finished writing Luna the ticket, Bock drove off after the tan colored car.

In rebuttal, the State called Brenda Green. Appellant objected to Ms. Green's testimony as violative of the "rule" since

---

5. Pursuant to appellant's request, this exhibit was made a part of the appellate record.

6. Rule 613 provides as follows:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order on its own motion. Tex.R.Crim.Evid. 613.

Ms. Green had been in the courtroom during Mr. Luna's testimony. The State contended that they were unaware of Ms. Green's potential as a witness until she approached them following Luna's testimony. The trial court overruled appellant's objection.

Ms. Green testified that she was one of two women in a tan colored car that passed Officer Bock while he had someone pulled over. Being a personal friend of Bock's, she called his name out as she passed. Appellant contends that it was an abuse of discretion to allow Ms. Green to testify, as she was present in the courtroom during the testimony of other witnesses.

It has long been held that the ruling of the trial court on an objection to a witness testifying when he has remained in the courtroom after having been placed under the "rule" may not be relied upon as a ground for reversal unless an abuse of discretion is shown; and until the contrary has been shown, it will be presumed on appeal that discretion was properly exercised. *Webb v. State*, 766 S.W.2d 236, 240 n. 2 (Tex.Cr.App.1989); *Day v. State*, 451 S.W.2d 508, 509 (Tex.Cr.App.1970) citing *Davidson v. State*, 386 S.W.2d 144, 148 (Tex.Cr.App.1965); *Owens v. State*, 503 S.W.2d 271, 273 (Tex.Cr.App.1974).

In the instant case, Ms. Green had not been summoned as a witness and was not connected with the State's case in chief, but rather became a necessary witness due to events during trial. The good faith of the prosecutor is not questioned. See *Owens*, supra at 273.

We further note that the State was not negligent in failing to place Green under the rule since her identity was not discovered until sometime after Mr. Luna testified. Therefore, we find that appellant has failed to show a clear abuse of discretion. Point of error number seven is overruled.

Judgment of the trial court is affirmed.

TEAGUE, J., concurs in the result.