

**NUMBERS 13-08-00324-CR**
**13-08-00325-CR**
**13-08-00326-CR**
**13-08-00327-CR**
**13-08-00328-CR**
**13-08-00329-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**THE STATE OF TEXAS,**                                          **Appellant,**

**v.**

**HORACE MARK RYMAN,**                                       **Appellee.**

**On appeal from the 156th District Court of Live Oak County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

Appellee, Horace Mark Ryman, was indicted on multiple charges arising out of a motor vehicle collision in which several people were injured and two people were killed. The State appeals the trial court's order granting Ryman's motion to suppress a video

created by a victim of the collision, purporting to demonstrate Ryman's ability to view the tail lights of a vehicle that he collided with from behind. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 2008). We affirm.

## I. BACKGROUND

Ryman was indicted by six separate indictments filed in six separate trial court cause numbers.[1] The indictments were for (1) intoxication manslaughter, (2) manslaughter, (3) aggravated assault, (4) injury to a child, (5) injury to an elderly person, and (6) aggravated assault with a deadly weapon, all arising out of the same motor vehicle collision. On February 11, 2008, Ryman filed a "Motion to Determine Admissibility of Evidence" in each of the six trial court cases. In the motions, Ryman moved to suppress "[a]ll diagrams, videotapes, photographs or other demonstrative evidence that were prepared using any vehicles and equipment not involved in the collision of December 21, 2006."

The trial court held a hearing on the motions on February 19, 2008. At the hearing, the State informed the trial court that it intended to offer a video, created by one of the victims, as demonstrative evidence. The State anticipated that Ryman's defense would be that, at the time of the collision when he rear-ended the victim's vehicle, he could not see the vehicle's tail lights because they were obscured by a basket containing a washer and dryer attached to the rear of the vehicle. The video was intended to show that Ryman could have seen the tail lights.

---

[1] The trial court cause numbers are: L-07-0051-CR-B, L-07-0050-CR-B, L-08-0021-CR-B, L-07-0049-CR-B, L-07-0048-CR-B, and L-07-0047-CR-B.

2

The State offered testimony from three witnesses describing the video.[2]  First, Enrique Mayoral, Sr. testified that he was one of the victims in the collision.  At the time of the offense, he was riding as a passenger in a 1999 Astro van that he owned.  The van had a "receiver basket" that was attached "in the hitch in the rear part of the van, and it goes on the top of the bumper."  The basket was specially built for the van by Sigfredo Ceja, who also owns an Astro van[3] and who had a similar basket attached to his van.  Mayoral testified that at the time of the collision, the basket was holding a white washer and dryer, and he testified that they were "normal" sized.

Mayoral stated that Ceja offered to help him make a video because Mayoral and Ceja knew that Ryman's defense would be that the basket and washer and dryer were covering the van's tail lights.  Mayoral testified that the purpose for making the video was to show that, with the basket on the van, a person traveling behind the van could see the tail lights.

Mayoral testified that to make the video, Adam Guerra shot the video footage while Ceja drove his own van, using his own basket to carry a washer and dryer.  At first, Mayoral testified that he used a washer and dryer that were "exactly the same" and were the "same brand and same type" as the ones he was transporting at the time of the collision.  He further testified that the washer and dryer used in the video were also white.

On cross-examination, however, Mayoral stated that the washer and dryer used in the video were not the same size as those he was transporting on the day of the collision.

---

[2] The video itself does not appear in the record.

[3] Mayoral stated he believed that Ceja's van was a 1998 model Astro van.

3

He testified that the "dryer is a little bigger and the washer is a little smaller." But, he explained, they fit in the basket, as did the ones he transported at the time of the collision. On re-direct, Mayoral admitted that he did not know if the washer and dryer used in the video were the same year or same model as those he was transporting on the day of the collision, but he said it was "more or less" the same type. In response to questions from the court, Mayoral stated he did not know if the washer and dryer were the same size: "It might be bigger or maybe smaller."

Next, Ceja testified that he is a welder and that he built the basket that was attached to Mayoral's van at the time of the collision. He stated that he has a basket that is exactly the same size as the one he prepared for Mayoral. He also explained that he owns a van that is "two years' difference" from Mayoral's van.

Ceja stated that he helped Mayoral make the video to "demonstrate that the basket was—did not obstruct the lights because I have one exactly like it, and I made one knowing that it was not going to obstruct the lights. And I helped him because I knew that someone was saying that it did obstruct the lights." He explained that the basket itself did not have any lights. He claimed that he did not put lights on the basket because the van's tail lights were not obstructed by the basket.

Ceja testified that he helped put the washer and dryer into the basket to make the video. He stated that they "fit well, and there was a small space and he motioned with his finger two, three inches . . . on either side." He stated that there was no way the washer and dryer could slide around because the basket had a gate that could lock into place. Also, the basket was covered with a screen all around and in the bottom, so that the washer and dryer could be tied down. Ceja testified that they did not tie the washer and

dryer down in order to make the video because they were already secured in the basket, and it was not necessary.

Finally, Adam Guerra testified that he is an investigator with the Watts Law Firm in San Antonio, Texas. He testified that he assisted Mayoral in taking the video at issue by running the videotape and providing the camcorder. He said that the video was made on a highway on the outskirts of San Antonio. Guerra explained that the first part of the video was taken on a frontage road, and he was outside filming using a tripod. During the second part of the video, he was a passenger in a vehicle driven by Mayoral, and he was videotaping the van with the washer and dryer in its basket.

Guerra stated, however, that the video was not taken on the same highway where the collision occurred. When asked if the lighting was the same at the time of the collision, Guerra stated, "I wouldn't think so." Rather, Guerra stated that the men picked the location because it had a frontage road that was "pretty straight and pretty safe I guess."

Guerra stated that he did not know what speed they were traveling when they made the video. He stated, "We didn't try to reenact the accident or the speeds by any means. It was more just to kind of get a visual of what someone may have seen . . . that night, the night of the accident." Rather, the men were merely trying to determine whether the washer and dryer had obscured the lights on the van.

Guerra then explained what he saw while making the video:

The angles that we—the different speeds, different angles, different depths there didn't seem to be any problems whatsoever seeing the lights, the washer and dryer especially because they happen to be white. I mean, it really reflected not only the washer and dryer, but it helped bring out the redness in the lights whether the breaks [sic] were applied or not. We also did it with breaks [sic] applied, breaks [sic] not applied, just different little scenarios that may or may not have helped. I don't know.

5

On cross-examination, Guerra admitted that he could not recall seeing the van's license plates or the lights on the license plate.

After the testimony concluded, the State argued that it did not intend to offer the video as an experiment using the same van, basket, and washer and dryer. Rather, the video would be used for demonstrative purposes because "the defendant is going to get up and testify that he couldn't see the lights to the van when he hit it from behind." The State argued that it was irrelevant that the washer and dyer might be "a couple of inches" different.

Ryman's attorney then countered that, in fact, the State intended to use this evidence to prove that Ryman could see the lights and should have seen the lights. He argued that: (1) the speed was different; (2) it was unclear whether the washer and dryer were the same size; and (3) the lighting was not the same.

On March 14, 2008, the trial court orally stated that it would grant the motion to suppress. On May 7, 2008, the trial court issued a written ruling that included findings of fact. Specifically, the trial court found that:

6.   The vehicle depicted in the video sought to be used by the state as demonstrative evidence is not the same as the vehicle occupied by the deceased victim.

7.   The vehicle depicted in the video was represented to be similar to the actual vehicle but not the same year model.

8.   There was no showing that the weather conditions at the time of day or night when the video was prepared were similar to the time of the collision.

9.   There was no showing that the road conditions were similar to the time and place of the collision.

6

10. There was no showing that the light configuration, which was the major emphasis of the subject video, on the rear of the vehicle depicted in the video was similar.

11. There was no evidence that the light on the rear of the subject vehicle were the same distance apart as the vehicle involved in the collision.

12. There was no evidence to show that the light on the rear of the vehicle depicted in the video were the same height above the roadway or the basket attached to the rear of the vehicle involved in the collision.

13. The evidence did demonstrate that the basket attached to the rear of the vehicle depicted in the video was the same as the basket on the rear of the vehicle involved in the collision.

14. There was evidence to show that the washer and dryer loaded in the basket on the rear of the vehicle depicted in the video were not the same as the items located in the rear of the vehicle involved in the collision.

15. There was no evidence that the washer and dryer loaded in the basket as depicted in the video were the same size as the actual washer and dryer in the basket at the time of the accident.

16. The evidence presented at hearing [sic] indicated that the washer and dryer loaded in the basket depicted in the video were smaller that [sic] the washer and dryer in the basket when the collision occurred.

In conclusion, the trial court held that "the video sought to be exhibited by the State to the Jury in trial of these causes has not been established to be a fair and accurate representation of the rear of the vehicle involved in the collision made the subject of these indictments."

On May 20, 2008, the State filed notices of appeal in each cause number. The notices of appeal stated that "[t]he evidence that was the subject of the defendant's written motion is of substantial importance in the instant case. Moreover, jeopardy has not attached in the instant case. The appeal of the pre-trial order entered by this court is

7

authorized by the express terms of the Texas Code of Criminal Procedure." The notices of appeal cited article 44.01(a)(5). However, while the notices of appeal were signed by the district attorney, they did not contain any "certificate" and were not notarized.

The same day, May 20, the State filed separate documents in each cause number titled, "Certificate in Support of State's Notice of Appeal." These documents stated:

> The undersigned counsel is the prosecuting attorney in the instant case. As such the undersigned certifies to this Court that the instant appeal is not taken for purposes of delay and that the evidence that has been suppressed by the order of this Court is of substantial importance in the case.

This Court docketed the appeals as cause numbers 13-08-00324-CR, 13-08-00325-CR, 13-08-00326-CR, 13-08-00327-CR, 13-08-00328-CR, and 13-08-00329-CR. We stayed the trial court's proceedings pending the outcome of the appeals by order dated June 12, 2008, and we consolidated the appeals by order dated September 9, 2008.

## II. JURISDICTION

Ryman first argues that this Court lacks jurisdiction over this appeal because the State's notice of appeal was not properly certified as required by article 44.01(a)(5) of the code of criminal procedure. TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). Article 44.01(a)(5) provides that the State may appeal an order by the trial court suppressing evidence if "jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence . . . is of substantial importance in the case." *Id.* The Court of Criminal Appeals has held that the certification requirement is jurisdictional. *State v. Riewe*, 13 S.W.3d 408, 411 (Tex. Crim. App. 2000).

8

Ryman concedes that the certification need not be in the notice of appeal itself and can be included in a separate document. *See State v. Johnson*, 175 S.W.3d 766, 767 (Tex. Crim. App. 2005). However, Ryman argues that neither the notice of appeal nor the separate certificate was sworn and notarized; thus, it was defective and failed to invoke the Court's jurisdiction. Ryman cites *State v. Johnson* for this proposition. *Id.* In *Johnson*, however, although the State included its certification in an affidavit filed by the district attorney, the Court of Criminal Appeals did not hold or imply in any way that an affidavit was required. *Id.* And we have not located any case that requires the certification under article 44.01(a)(5) to be a sworn and notarized statement. The statute does not require the "certification" to be verified or notified or to be included in an affidavit, and we will not read the requirement into the statute. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). We conclude that we have jurisdiction over this appeal, and now we turn to the merits.

## III. EXCLUSION OF DEMONSTRATIVE EVIDENCE

By its sole issue, the State argues that the trial court erred by suppressing the video. The State argues that because it only intended to offer the video as demonstrative evidence, the event depicted in the video need only be "substantially similar" to the event in question. The State argues that it submitted evidence that: (1) the vehicle in the video was the same make and model as that involved in the accident; (2) the basket was the same; and (3) both the washer and dryer used in the video and involved in the accident were "normal size." The State argues that any differences should merely go to the weight, and not the admissibility, of the video.[4] We disagree.

---

[4] Additionally, the State relies on Texas Rules of Evidence 401 and 901 to argue that the evidence should be admitted because it was relevant and was properly identified and authenticated by persons with knowledge of the video's creation. *See* TEX. R. EVID. 401, 901. Ryman did not object on these grounds, nor

We review a trial court's decision to exclude demonstrative evidence for an abuse of discretion. *Valdez v. State*, 776 S.W.2d 162, 168 (Tex. Crim. App. 1989); *Wright v. State*, 178 S.W.3d 905, 920 (Tex. App.–Houston [14th Dist.] 2005, no pet.). A trial court has wide latitude in its decision to admit or exclude evidence. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). We will not overturn the trial court's decision if it is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App.1990) (op. on reh'g).

"[G]enerally the results of out-of-court experiments are admissible in the discretion of the trial court if the experiment was made under similar conditions to the event to which the results of the experiment relate." *Valdez*, 776 S.W.2d at 168. "To be admissible, an experiment need not be made under identical conditions of the event; dissimilarities go to the weight and not the admissibility." *Id.* This is not to say that any dissimilarity can be disregarded and left to the jury's discretion—when the demonstration or experiment is different from the actual event in "critical" ways, those dissimilarities can require exclusion of the evidence. *See, e.g., Cantu v. State*, 738 S.W.2d 249, 254-55 (Tex. Crim. App. 1987); *see also Cockrell v. State*, No. 14-05-00862-CR, 2006 WL 2290743, at *3 (Tex. App.–Houston [14th Dist.] Aug. 10, 2006, pet. ref'd) (mem. op.; not designated for publication). The proponent of the demonstration, which in this case was the State, bears the burden to show that the conditions under which the demonstration is conducted are sufficiently similar to the event in question. *See Valdez*, 776 S.W.2d at 168; *Cantu*, 738 S.W.2d at 255.

For example, in *Cantu,* the defendant requested that the court allow him to conduct

did the trial court rule on the applicability of these evidentiary rules.

an experiment in the courtroom to demonstrate the lighting that existed in a room where an alleged murder took place. 738 S.W.2d at 254. The trial court refused to allow him to turn out the lights in the courtroom to demonstrate the amount of light emanating from a lamp, noting that "the problem is that [the courtroom] is not at all like the surroundings and the conditions that existed on November 8 of '84." *Id.* Specifically, the judge pointed out that the height of the walls, the width of the room, and the color of the walls were different from the room in which the murder occurred, which affected the degree of illumination. *Id.*

The court of criminal appeals affirmed, holding that an experiment's conditions must be similar to the original event with respect to the "critical" facts the experiment attempts to demonstrate:

> In the instant case the experiment was not substantially similar to the actual event. As the trial judge noted, the size of the room and the color of the walls were not the same. For an experiment designed to show the amount of illumination cast by a lamp in a dark living room of a house, such factors are critical. The trial judge did not abuse his discretion in refusing to allow the experiment to be conducted in the courtroom.

*Id.* at 255.

Similarly, in this case, the State did not meet its burden to show that the conditions under which the demonstration were conducted were sufficiently similar to the event in question with respect to the critical facts. The undisputed purpose for the video was to show that Ryman could have seen the vehicle's tail lights. The ability to see an object in a particular place at a particular time is affected by numerous, "critical" conditions. *See id.* As the trial court concluded, the evidence did not establish that: (1) the lighting of the area on the highway was the same in the collision as in the demonstration; (2) the tail lights on the van used in the demonstration were the same space apart as on the vehicle in the

11

accident; (3) the road conditions were the same; or (4) the weather conditions were the same. *See id.* These were all critical factors that the State was required to establish, but did not. *See id.*

Furthermore, although the State argues that the vehicle in the video was the same make and model as that involved in the accident, the court's findings of fact concluded, and the evidence showed, that the years of the vans were not the same. The State did not offer any testimony explaining that the rear light configurations of the vehicles were the same despite this difference. Additionally, although the court found that the baskets on the rear of the vehicles were the same, the court found that the evidence showed that the washers and dryers were not. These were also critical factors that the State should have established as similar to event sought to be demonstrated. *See id.*; *see also Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 590 (Tex. App.–Corpus Christi 1982, no pet.) (holding that video attempting to demonstrate conditions of vehicle was properly excluded because proponent did not show that vehicles were similar). Because so many critical conditions were not similar, we conclude that the trial court did not abuse its discretion in excluding the video.

## IV. CONCLUSION

Having overruled the State's only issue, we affirm.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

12

Memorandum Opinion delivered and
filed this the 30th day of July, 2009.

13