# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00710-CR

**Theodore Timothy Demaree, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 16-3332-K368, HONORABLE RICK J. KENNON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury found appellant Theodore Timothy Demaree guilty of aggravated robbery with a deadly weapon, *see* Tex. Penal Code § 29.03, and unlawful possession of a firearm by a felon, *see id.* § 46.04. Punishment was enhanced with allegations of two prior felony convictions, which the jury found "true." *See id.* § 12.42. The jury assessed punishment at 25 years' imprisonment for the count of aggravated robbery and eight years' imprisonment for the count of unlawful possession of a firearm by a felon. The trial court rendered judgments consistent with the jury's verdicts and ordered that Demaree serve the sentences concurrently. In two points of error, Demaree contends that the trial court abused its discretion in allowing a police officer to perform an in-court demonstration of "racking the slide on a pistol." We will modify the trial court's judgments of conviction to correct non-reversible clerical errors and affirm the judgments as modified.

## BACKGROUND

At trial, the complainant Charles Richardson testified to the following facts. He met a woman online and then exchanged text messages with her. Richardson interpreted her messages to indicate that she was a prostitute and that she wanted him to bring methamphetamine to their rendezvous. On December 25, 2016, Richardson brought cash, meth, and alcohol to the apartment where they had agreed to meet. When Richardson entered the apartment, he noticed that the place was "filthy" and "did not look like anybody might be living there." He sat on a blanket with the woman and they both drank alcohol and smoked meth. They also began to negotiate the price for sex. Richardson suddenly heard a door open and close and saw someone "come around the corner with a pistol pointed directly at [him]." At trial, Richardson identified Demaree as the person who pointed the pistol at him. Richardson further testified that Demaree told him, "Give me the money."

According to Richardson's testimony, he was at first reluctant to give Demaree any money and did not comply with Demaree's command. However, Richardson became convinced that Demaree was "really going to shoot [him]." Richardson pulled out his phone and his keys and put them on the blanket. He then removed some of the cash from his pocket and placed it on the floor. When Demaree reached down to collect the money, Richardson tried to grab the gun, and the two men "started wrestling and . . . fighting for the gun." Richardson "ended up on the ground," and Demaree "started hitting [him] with the pistol." Demaree hit him on the head with the gun so hard that he saw "a big, big star" and "it was kind of shocking." Richardson believed that Demaree was going to kill him. Richardson then noticed that the front door was open and ran out of the apartment. He realized that Demaree was still behind him in the doorway with the gun. Richardson testified

2

that Demaree was "rapidly pulling back the slide on the pistol." He further testified that the gun was "jammed" and that, after "racking the slide," Demaree closed the apartment door and locked the deadbolt.

Richardson also testified that he saw two people in the parking lot and told them that he had been robbed. According to Richardson, "there was lots of blood." Someone then called the police.

At trial, the State also called officers with the Austin Police Department, who testified concerning the subsequent investigation. These officers testified that they recovered Richardson's keys "in what appeared to be a flight path" from the apartment in which the alleged robbery occurred. The officers were not able to find any firearm. With the help of a K-9 unit, however, officers apprehended two suspects, one of whom was eventually identified as Demaree. The other suspect was the woman with whom Richardson allegedly met in the apartment.

Officers also testified that they found a live 9-millimeter round on the floor of the apartment. Outside the jury's presence, the prosecutor informed the trial court that he intended to offer a demonstration in which an officer would operate the slide of a pistol and eject a "dummy round." The following exchanged then occurred:

> State: So there has been testimony from Mr. Richardson that as he was running out of the apartment he saw Mr. Demaree attempting to operate the slide of the gun as if it were jammed. We have also heard testimony from Officer McDonald, and we will hear—and have the live round of ammunition that was found at that location, admitted into evidence this morning through the crime scene technician.
>
> The witness after that is going to be Detective Chiappardi. And Detective Chiappardi has brought with him a pistol that fires 9-millimeter ammunition. He has dummy rounds loaded into that. The bailiff, Bailiff Lowry, has inspected the weapon, has

3

deemed it to be safe, and all we—the demonstration that we are proposing for the Court is for Detective Chiappardi to be able to demonstrate to the jury racking the slide and it ejecting that round to explain how that round winds up in the location inside the apartment where the fight occurred and where Mr. Richardson testified he saw Mr. Demaree racking the slide.

The Court: Other than the dramatic effect of showing the jury that, can't he just say, "By the way, when you do that, the ammunition pops out and lands on the floor"? I mean—

State: Well, I understand that—I think all of us that are familiar with guns and that stuff—but there's—I don't know what the jury's experience with that is, and I do believe that the demonstration makes that more clear. I don't believe that it is overly prejudicial. I think it's really just on—

The Court: Well, that's my next question. Why do you think that's so prejudicial?

Defense: It's overly prejudicial: A, Your Honor, we're not even for sure they found the gun, right? I mean, I think we've called Mr. Richardson—

The Court: Well, they already testified they didn't find the gun.

Defense: Right. What I'm saying is, I think to have a police officer in here racking a firearm in front of a jury, when there is—there has been no firearm even found and we haven't been able to attribute the bullet to Mr. Demaree at all—it's an abandoned apartment—I mean, I think it would be highly prejudicial, and it would probably frighten the jurors. I mean, it's—and it's overkill. I mean, the cop could just explain what happens.

\*\*\*

The Court: I'm going to overrule the objection on that. I'm going to allow that to happen. I'm assuming he's not going to do it 15 times?

State: It's going to be—I would anticipate that it's going to be one time.

The Court: Okay. Okay.

Defense: Well, we'll lodge our objection now—

The Court: That's fine.

Defense: —and then we'll reurge it at the time.

4

Later, the State questioned Detective Chiappardi concerning the live round recovered in the apartment:

State: Was there anything, other than this bullet, that you found in that apartment that had anything—any connection to—any way, shape, form, or fashion to a firearm?

Detective Chiappardi: No.

State: In all that trash and all the other rooms and all that stuff, there was nothing; there was no guns, no boxes, no other ammunition, no nothing, no receipts, no anything. The only thing in that whole thing was that one live round?

Detective Chiappardi: Yes.

State: All right. Now, then, later, when you reviewed Mr. Richardson—the victim in this case's statement, did you learn that he was involved in an altercation where Theo Demaree was hitting him with a gun that occurred over in the area between the fireplace and the front entry?

Detective Chiappardi: Yes.

State: And, furthermore, did you learn when you reviewed his statement that he said that when he fled, he—that Mr. Demaree was racking the slide of his gun?

Detective Chiappardi: Yes.

State: How is that bullet right there related to those statements?

Detective Chiappardi: If a gun is loaded and you rack a round, whatever round is in the gun chambered at the time would be ejected from the gun. So the fact that we found a bullet next to where the victim said a gun was racked, it actually corroborated—to us, it corroborated his story even further that there was a gun in play in this case.

***

State: All right. Did you—basically everything that Mr. Richardson said in his statement, did you find evidence that corroborated that?

Detective Chiappardi: Yes.

5

\*\*\*

State: And did he—we've talked about he said that he saw him racking the slide. Did you find this bullet where you would expect to find it, based on Mr. Richardson's statement?

Detective Chiappardi: Yes.

The following exchange then occurred:

State: At this time, Judge, I'd like to do the demonstration that we discussed earlier.

\*\*\*

Defense: And, Your Honor, as we previously discussed, I would strongly object to any in-court demonstrations. There was no firearm found. The jury has been explained what happens when a gun is racked; a bullet comes out. I think it's likely prejudicial and somewhat scary to do it with a firearm in the middle of the courtroom.

The Court: Okay. I'm going to overrule that objection.

After further testifying about firearms and explaining that one "would have to rack the slide back" to clear a jammed gun, the officer performed the demonstration.

Demaree was convicted and sentenced, and this appeal followed.

## STANDARD OF REVIEW

In two points of error, Demaree contends that the trial court abused its discretion in allowing Detective Chiappardi to perform the in-court demonstration of "racking the slide on a pistol." "We review the trial court's decision to allow an in-court demonstration for an abuse of discretion." *Warfield v. State*, No. 03-15-00468-CR, 2017 WL 2628563, at \*5 (Tex. App.—Austin June 14, 2017, pet. ref'd) (mem. op., not designated for publication) (citing *Valdez v. State*,

776 S.W.2d 162, 168 (Tex. Crim. App. 1989)); *accord Hudson v. State*, No. 14-16-00581-CR, 2017 WL 5472626, at \*3 (Tex. App.—Houston [14th Dist.] Nov. 14, 2017, pet. ref'd) (mem. op., not designated for publication); *see Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018) ("We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard."). "Out of necessity, reviews of trial court rulings on demonstrations depend on the facts of the case." *Warfield*, 2017 WL 2628563, at \*5. "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement." *Gonzalez*, 544 S.W.3d at 370. "We may not substitute our own decision for that of the trial court." *Id.*

## DISCUSSION

In his first point of error, Demaree contends that the trial court abused its discretion in allowing the demonstration because "[t]he demonstration was speculative and potentially dissimilar to what may or may not have actually occurred on the day in question." According to Demaree, "[t]he State did not meet its burden to show that the conditions under which the demonstration was conducted were sufficiently similar to the event in question with respect to critical facts. These critical factors should have been addressed rather than being left to the jury's discretion." In his second point of error, Demaree contends that "the demonstration was in violation of Rule 403 of the Texas Rules of Evidence" because "the probative value of Detective Chiappardi's demonstration was substantially outweighed by its prejudicial effect."

We agree with the State that Demaree has only preserved his second point of error. Outside the jury's presence, Demaree's attorney made the following objections to the demonstration:

7

It's overly prejudicial: A, Your Honor, we're not even for sure they found the gun, right? I mean, I think we've called Mr. Richardson—

***

What I'm saying is, I think to have a police officer in here racking a firearm in front of a jury, when there is—there has been no firearm even found and we haven't been able to attribute the bullet to Mr. Demaree at all—it's an abandoned apartment—I mean, I think it would be highly prejudicial, and it would probably frighten the jurors. I mean, it's—and it's overkill. I mean, the cop could just explain what happens.

Later, in front of the jury, Demaree's attorney renewed his objection:

And, Your Honor, as we previously discussed, I would strongly object to any in-court demonstrations. There was no firearm found. The jury has been explained what happens when a gun is racked; a bullet comes out. I think it's likely prejudicial and somewhat scary to do it with a firearm in the middle of the courtroom.

We conclude that these complaints were not an objection that "stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint" that Demaree raises in his first point of error. *See* Tex. R. App. P. 33.1(a)(1)(A); *Warfield*, 2017 WL 2628563, at *6 ("Appellant further asserts that the gun demonstration was dissimilar because it lasted longer than 'the blur of events' as the incident happened. However, appellant did not object to the gun demonstration at trial because the viewing time was not accurately portrayed."); *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) ("For a party to preserve a complaint for appellate review . . . the point of error on appeal must comport with the objection made at trial."); *accord Beaty v. State*, No. 03-16-00669-CR, 2017 WL 2928113, at *2 (Tex. App.—Austin July 7, 2017, no pet.) (mem. op., not designated for publication). Demaree's objections focused on the demonstration's allegedly prejudicial nature and

8

did not sufficiently articulate an objection that the demonstration was dissimilar to the actual event. Accordingly, we overrule Demaree's first point of error.

Demaree has, however, preserved his second point of error—his Rule 403 objection. *See* Tex. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."). Under Rule 403, we presume that the probative value of relevant evidence exceeds any danger of unfair prejudice, and evidence must be excluded under the rule only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value. *See Robisheaux v. State*, 483 S.W.3d 205, 217 (Tex. App.—Austin 2016, pet. ref'd). Moreover, we must bear in mind that "all evidence against a defendant is, by its very nature, designed to be prejudicial." *Id.* at 217–18 (cleaned up). When performing a Rule 403 analysis, we must balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Id.* at 218 (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)). Finally, "[a]lthough appellate courts review a trial court's ruling on Rule 403 grounds for an abuse of discretion, . . . reviewing courts should bear in mind that trial courts are given an especially high level of deference for Rule 403 determinations." *Id.* (cleaned up).

9

We conclude that the demonstration was probative because it is possible that not all the jurors were familiar with semi-automatic firearms and the ejection of a chambered round that Detective Chiappardi verbally described. The demonstration illuminated Detective Chiappardi's testimony that the discovery of the live round in the apartment corroborated Richardson's testimony that Demaree was "racking the slide" near the apartment's door. Moreover, the record before us does not indicate that Detective Chiappardi performed the demonstration more than once, that the demonstration took very long to perform, that Detective Chiappardi ever pointed the gun at the jurors, or that the State ever claimed or even suggested that the gun used in the demonstration was the gun that Demaree allegedly used during the robbery. In light of the factors described above and keeping in mind the "especially high level of deference" we afford the trial court "for Rule 403 determinations," *see id.*, we cannot conclude that the trial court abused its discretion in allowing the demonstration.

Moreover, even if we were to assume that the trial court should not have allowed the demonstration, we would disregard this presumed error unless we were to conclude that it affected Demaree's "substantial rights." *See* Tex. R. App. P. 44.2(b); *Hamrick v. State*, No. 03-18-00253-CR, 2018 WL 2347015, at *3 (Tex. App.—Austin May 24, 2018, pet. ref'd) (mem. op., not designated for publication). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but slight effect." *Campbell v. State*, 382 S.W.3d 545, 553 (Tex. App.—Austin 2012, no pet.).

10

The trial court heard Richardson's detailed testimony concerning the robbery, in which Richardson unequivocally averred that Demaree pointed a pistol at him, that he struggled with Demaree for control of the weapon, and that he observed Demaree stand near the apartment door and rack the slide as Richardson fled. Richardson's testimony was corroborated by the discovery of blood inside the apartment, by the nature of his injuries, which, an officer testified, were consistent with being struck with a pistol, and by the otherwise unexplained presence of the live round on the apartment floor. In addition, at trial, Demaree did not contest his presence in the apartment or the fact that he assaulted Richardson—instead, he merely argued that he did not possess a firearm during the encounter. In light of this evidence and of the record as a whole, we cannot conclude that the demonstration, even if improperly allowed, "had a substantial and injurious effect or influence in determining the jury's verdict." *See Schmutz*, 440 S.W.3d at 39. Accordingly, we overrule Demaree's second point of error.

However, our own review of the record reveals non-reversible clerical errors in the judgments. Each judgment lists "N/A" in the spaces indicating the defendant's plea to the two enhancement paragraphs and in the spaces indicating whether the fact-finder found the enhancement paragraphs "true." The record before us indicates that Demaree pleaded "not true" to each of the two enhancement paragraphs alleged against him. The record further indicates that the jury found the two enhancement paragraphs "true." This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we will modify the judgments to correct these omissions.

11

**CONCLUSION**

We modify the trial court's judgments of conviction to reflect that Demaree pleaded "not true" to two enhancement paragraphs and that the jury found the two enhancement paragraphs "true." We affirm the judgments as modified.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Toth

Modified and, as Modified, Affirmed

Filed: November 1, 2018

Do Not Publish