**264·15**

NO. PD-0264-15

# ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

ROBERT EARL SCHIELE

APPELLANT-PETITIONER

V.

THE STATE OF TEXAS,

APPELLEE-RESPONDENT,

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

IN APPEAL NO. 01-13-00299-CR

FROM THE

COURT OF APPEALS

FOR THE FIRST JUDICAL DISTRICT

HOUSTON, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

APR 17 2015

Abel Acosta, Clerk

ROBERT EARL SCHIELE

TDCJ-ID NO#1850352

ALLEN POLUNSKY UNIT

3872 F.M. 350 SOUTH

LIVINGSTON, TEXAS

77351

ORAL ARUGMENT REQUESTED

# TABLE OF CONTENTS

INDEX OF AUTHORITIES................................iii

STATEMENT REGARDING ORAL ARGUMENT.......................... 1

STATEMENT OF PROCEDURE HISTORY............................. 2

STATEMENT OF THE CASE..................................... 1.

### GROUND FOR REVIEW NO. ONE

DID THE DECISION OF THE FIRST COURT OF APPEALS CONFLICT WITH THE U.S. SUPREME COURT DUE PROCESS STANDARD THAT WAS ANNOUNCED NN JACKSON V VIRGINIA, REQUIRING EVIDENCE TO BE BOTH LEGALLY AND FACTUALLY SUFFICIENT TO SUSTAIN A CONVICTION, IN THIS CASE THE EVIDENCE WAS LEGALLY INSUFFICIENT.

### GROUND FOR REVIEW NO. TWO

AS PRESENTED BY THE STATE GROUND TWO ADDRESSES PRONTS OF ERROR TWO THROUGH NINE REGARDING THE TRIAL COURT'S ERROR IN ALLOWING EXTRANEOUS EVIDENCE REGARDING PTITIONERS PAROLE.

### GROUND FOR REVIEW NO. THREE.

DID THE TRIAL COURT ERROR REACH TO A LEVEL OF CONSTITUTIONAL DIMENSION BY ALLOWING INSUFFICIENT EVIDENCE REGARDING AN INJURY TO A CHILD CHARGE FROM OKLAHOMA DURING PUNISHMENT

ARGUMENT NUMBER ONE........................................3

ARGUMENT NUMBER TWO....................................... 7

ARGUMENT NUMBER THREE.................................... 11

PRAYER FOR RELIEF....................................... 13

CERTIFICATE OF SERVICE..................................13

APPENDIX...............................................

INDEX OF AUTHORITIES

CASES:

CARRIZALES V STATE;
397 S.W. 3d 251,255(Tex.Crim.App.[13-Dist]2013)................3
CRUME V STATE:
342 S.W 3d 241(Tex.App.Beaumont 2011)........................ 7
IN RE WINSHIP:
397 U.S.358(1970)........................................... 2
JACKSON V VIRGINIA:
443 U.S.307,99 S.Ct.2781,61 L.Ed.2d 560(1979)...............2,3,5,7
MONTGOMERY V STATE:
810 S.W.2d 372,388(Tex.Crim.App.1990)........................8
MOTON V STATE:
991 S.W.2d 841,846(Tex.Crim.App.1999)....................... 10
MOSES V STATE:
105 S.W.3d 622,627(Tex.Crim.App.2003)....................... 11
ORR V STATE:
307 S.W.3d 308,394(Tex.App. [2nd-Dist]2010)..................4
POWELL V STATE:
157 S.W.3d 646(Tex.Crim.App.2006)...........................9
POWELL V STATE:
189 S.W.3d 285(Tex.Crim.App.2006)........................... 9
SANTELLAN V STATE:
939 S.W.2d 155,168(Tex.CRIM.APP.1997)....................... 8
SCHUTZ V STATE:
957 S.W.2d 52,71(Tex.Crim.App.1997)......................... 9
THOMPSON V LOUISVILLE:
362 U.S.199,80 S.Ct.62,4 L.Ed.2d154 (1960)................... 5
UNITED STATES V AKPAN:
396 F.Appx.88(5th.Cir.2010)................................. 6
UNITED STATES V CRUZ:
326 F.3d 392(3d.CIR2003).................................... 9
VALDEZ V STATE:
776 S.W.2d 162(Tex.Crim.App.1989)...........................10
WILEY V STATE;
74 S.W.3d 399,497 n.21(Tex.Crim.App.2002)...................10
WILLOVER V STATE:
70 S.W.3d 481,845(Tex.Crim.App.2002)........................ 11
WHEELER V STATE:
67 S.W.3d 879,888(Tex.Crim.App.2002)........................ 10

STATUTES:

ABA MODEL RULES 4-4-1........................................ 12
ABA MODEL RULES 3.8......................................... 12
STARE DECISIS DOCTRINE...................................... 3,4

TEXAS RULE OF EVIDENCE:

RULE 401.................................................... 8
RULE 402.................................................... 8
RULE 403.................................................... 10
RULE 404.................................................... 7
RULE 901.................................................... 11
Rule 902.................................................... 11
RULE1005.................................................... 11,12

NO. PD-0264-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

ROBERT EARL SCHIELE
                              APPELLANT-PETITIONER,

V.

THE STATE OF TEXAS
                              APPELLEE-RESPONDENT,


APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
_____


TO THE COURT OF CRIMINAL APPEALS OF TEXAS:

    Appellant-petitioner, respectfully submitt this Petition For

Discretionary Review, and moves this Honorable court to grant

review of this cause and offers the following in support thereof;


STATEMENT REGARDING ORAL ARGUMENT

The appellant request oral argument in this case because such

argument may assist the court in applying the facts to the issues

raised. It is suggested that oral argument may help simplify the

facts, and clarify the issues.


STATEMENT OF THE CASE

    Appellant was convicted for arson by a jury in the 441Th

District Court, in Polk County, and the conviction was enhanced

by a prior offense. On March 6, 2013, the jury returned a guilty

verdict, and on March 7, 2013, the jury deliberated on the punish-

ment and found the allegation of the enhancement offense to be

)1)

true, and assessed punishment for life in the Texas Department of Criminal Justice Division, and appellant filed a timely notice of appeal on March 8, 2013.

## STATEMENT OF PROCEDURAL HISTORY

In cause number 22.467, the appellant-petitioner was charged with the offense of Arson. Appellant-petitioner was convicted on March 7, 2013, and appealed the conviction.

On the 19th day of February 2015, the First Court of Appeals affirmed the conviction. No mation for re-hearing was filed

On Mar. 30ᵀʰ 2015, this Petition For Discretionary Review was timely forwarded to the Court Of Criminal Appeals at P.O. Box 12308, Capitol Station, Austin Texas 78711.

## GROUNDS FOR REVIEW

### I.

DID THE DECISION OF THE FIRST COURT OF APPEALS CONFLICT WITH THE UNITED STATES SUPREME COURT DUE PROCESS STANDARD THAT WAS ANNOUNCED IN JACKSON V VIRGINIA REQUIRING EVIDENCE TO BE BOTH LEGALLY AND FACTUALLY SUFFICIENT TO SUSTAIN A CONVICTION AS IN THIS CASE THE EVIDENCE WAS LEGALLY IN-SUFFICIENT.

### II.

AS PRESENTED BY THE STATE, GROUND TWO ADDRESSES POINT TWO THROUGH NINE REGARDING THE TRIAL COURT'S ERROR IN ALLOWING EXTRANEOUS EVIDENCE REGARDING PETITIONER'S PAROLE DURING THE GUILT/INNOCENCE PHASE OF TRIAL.

(2)

III.

DID THE TRIAL COURT'S ERROR REACH TO A LEVEL OF CONSTITUTIONAL
DIMENSION BY ALLOWING INSUFFICIENT EVIDENCE REGARDING AN
INJURY TO A CHILD FROM OKLAHOMA DURING PUNISHMENT.

## ARGUMENT NUMBER ONE

DID THE DECISION OF THE FIRST COURT OF APPEALS CONFLICT
WITH THE UNITED STATES SUPREME COURT DUE PROCESS STANDARD
THAT WAS ANNOUNCED IN JACKSON V VIRGINIA, REQUIRING EVIDENCE
TO BE BOTH LEGALLY AND FACTUALLY SUFFICIENT TO SUSTAIN A
CONVICTION AS IN THIS CASE THE EVIDENCE WAS LEGALLY
INSUFFICIENT.

The appellant courts decision conflict with the standard in

Jackson V Virginia,443 U.S.307,99 S.Ct.2781,61 L.Ed.2d 560(1979),

because the facts never proved appellant intentionally started a

or was involved in starting a fire. The evidence presented to the

jury was legally insufficient to satisfy the due process clause

of the fourteenth amendment, which required the state to prove

each element of the offense beyond a reasonable doubt.

In this case it was clear the petitioner suffered a violation of

fundamental fairness, thats guaranteed by due process, and the

court of appeals decision fatally denied petitioner of that right

which he's guaranteed protection under.

The petitioner was charged as a party to an offense that his

wife was also charged absent being indicted, or charged for the

offense under the law of party. A fatal variance occurred here

when the jury convicted petitioner as a party to an offense with-

out presenting evidence to show he was a party.

Applying the "Stare Decisis Doctrine" to this case its clear

that this case has simular elements of Carrizales V State,397 S.W

(3)

3d 251,255(Tex.App.-13th-Dist 2013):Orr V State,306 S.W.3d.380, 394(Tex.App.-2nd-Dist 2010) Inwhich two sister courts agreed that "In order to establish the corpus delicti in an arson case case, it is necessary to show the fire was designedly set by someone;" and in this case the state was required to show that petitioner intentionally started the fire, not base the determination on a hunch, but by presenting supporting evidence.

STARE DECISIS:
"stare decisis is a legal doctrine that means like facts will receive like treatment in a court of law."

In examining the state's theory of the case, and the argument's used to show motive, claiming petitioner lack of compliance with parole rules was the motive for allegedly starting the fire.

On page (12) of petitioners appellant brief, it shows how the appellant counsel sequenced the events prior to the house fire, and also argue that they claimed appellant set the house on fire that morning based on testimony by Marian Buffington, from CPS, that testified she was at petitioner home at 10:21 am On February 7th, and smelled something burning which she described as smelling like wood burning, she testified that she didn't smell the odor when she approched the house, but the further away from the house the more she smelled, which was logical, because she was only a few yards away from the area of where the property owner burn her trash, which explain why Buffington didn't smell the burning odor when she approched the petitioner's house. The Court Of Appeals erred by considering the state's unsupportive argument that the petitioner started the fire in order to cover up for not report- ing to his parole officer when states exhibit (6)(a video) show

(4)

that petitioner had been warned that a warrant for his arrest would bee issued by his parole officer the day prior to the fire, because petitioner knew he had failed a drug test, also the evidence showed that petitioner called his parole officer at 1:30 pm, and told his parole officer where he was located, and stayed there untile police came and arrested him.

The attorney also pointed out to the court of appeals on page (23) of his brief that the "state incorrectly argued" that petitioner lied to Captain Childers, stating petitioner said, he had left the house an hour before the fire was reported when the electronic monitor showed he left the house 14-minutes before the fire was reported," but the facts show petitioner had told Childers that he and his family had returned to the house approximatly one hour before they heard the sirens." He also told Childers that they started cooking lunch with some items being fried, and a grease fire startted and he thought he had put it out, and S/E. (6) show's that petitioner was constently being interupted by Childers, and not given the opportunity to state how long it took to begin cooking, or to put the fire out. In Jackson V Virginia, the U.S. Supreme court made it clear that a conviction is unconstitutional even if there is some evidence of guilt when all the evidence does not permit any retional fact-finder to find gullt beyond a reasonable doubt, which under the Jackson standard the state must prove every element. See Also. Thompson V Louisville, 362 U.S.199,80 S.Ct.62,4 L.Ed.2d 654(1960).

FATAL VARIANCE:

Petitioner assert's that a fatal variance occured when he

was convicted as a party to an offense, and not charged in the indictment, nor was the jury instructed on the law of party.

The petitioners wife was at the house prior to the fire, and she was also at the bridge when he was arrested. The state argued that petitioners wife was carrying a red expandable folder with all their important papers. The appellant counsel refer's to the fact that petitioner wife had gotten indicted for the same charge. (RR4:15) The facts are clear that the petitioner wife was carrying the red folder, which led the state to believe she was part of the incident, but absent a party instruction, or a charge in the indictment as a party, then the evidence of petitioners wife carring the red folder can not be used to convict the petitioner, and to sustain a conviction as a party to an offense, there must be evidence of a common purpose, or design prior to or contemporaneous with the criminal act. United State V Akpan,396 F.Appx.88(5th Cir.2010) The First Court of Appeals ignored the fact's pointed out on page (25) of the appellant brief that was an indicator that the fire was not set intentionally, was that all the family belongings, their clothes, their food, the kids toys, and other valuables were in the house during the fire.

They only had the cloth on their back other then the folder, also there was the testimony by the arson investigator that could not dispute the fact that the fire was accidental, there was no insurance fraud, or any othe reason for petitioner, or his wife to distroy their home, or property, and theirs no reason to assume the fire had something to do with petitioners parole, because the records show he called his parole officer, and waited there until

(6)

he was arrested. As far as his wife having the red folder, the court erred by not giving an instruction on the party law, but allowed the state to use evidence from whats shown to had been associated with petitioners wife, also the court ignored the statement by petitioner to Capt. Childers, that explained the reason for the petitioners wife to have the folder, which was the fact that "he and his wife and two kids that were home left to let the house are out,[following the accidential greas fire that he thought he put out] to talk to a man about renting a travel trailer to live in" Which was a factor ignored by the court of appeals as to the reason for the petitioners wife to have the red folder with their personal information, and non of their personal item, which was distroyed in the fire. The states theory of the offense is so lacking in justification, that there was an error well understood, and comprehended in existing law beyond any possibility for fairminded disagreement. The court of appeals in Beaumont agreed that, [as here] a conviction, or judgment to be void due to no evidence. See Crume V state,342 S.W.3d 241(Tex.App Beaumont 2011):Jackson V Virginia,443 U.S.307: The conviction is based simply on a "hunch" that lack support, and since jeopardy has attached here, the only resolution feesible would be to reverse the conviction, because of no evidence as required by the due process clause of the fourteenth amendment to the United States Constitution.

## GROUND FOR REVIEW NO. TWO
### AS PRESENTED BY THE STATE GROUND TWO ADDRESSES POINT TWO THROUGH NINE REGARDING THE TRIAL COURT'S ERROR IN ALLOWING EXTRANEOUS EVIDENCE REGARDING PETITIONERS PAROLE

The trial court's allowing 404(b) evidence to be presented

(7)

to the jury during the guilt-innocence phase of the trial, prejudiced th outcome of the proceeding by bolstering the states theory, and relieving the state burden of persuasion beyond a reasonable doubt of every essential element of the offense charged, which had it not been for the improper bolstering of the 404(b) evidence, the result of the proceeding more-then-likely would have different outcome. The state was allowed present evidence of the petitioners failed drug test, parole violations, anger management allo during the guilt/innocence phase of the trial, which had no relevance in proving petitioner had motive, intent, or that he committed the alleged offense gharged.

The records show that petitioner objected to the evidence, and the court erred by allowing the state to introduce the evidence during the guilt/innocence phase of the trial. The extraneous act's were not relevant since it was made clear petitioner called his parole officer shortly after the fire was discovered, which disproves the states theory, that petitioner started the fire to avoid reporting. The trial judge operated outside the boundaries of his discretion. See Santellan V State,939 S.W.2d 155,168(Tex.Crim.App 1997). Relevant evidence is evidence to make the existence of any fact that is of consequence to determination of the action more probable or less probable then it would without the evidence. See Tex.R.Evid.401. Evidence which is not relevant is not admissible. Tex,R,Evid.402, The evidence had no relevance apart from character conformity, and was not admissible, because it was evidence that the probetive value of the extraneous act evidence was outweighted by unfair prejudice. Tex.R.Evid.403:Montgomery V State,810 S.W 2d 372,388(Tex.Crim.App.1990). The stae argued that petitioner

(8)

opened the door to otherwise inadmissible evidence, when he stated , he was arrested after calling his parole officer, but the law forbids the straying beyond the scope of invitation. Schutz V State,957 S.W.2d 52,71(Tex.Crim.App.1997).

POWELL V STATE,

The state argued that the appellant counsel improperly applied Powell based on the fact that the court of criminal appeals reversed the dicision of the waco court of appeals in Powell V State,189 S.W.3d 285(Tex.Crim.App.2006). There are two totally different issues involved in the two case's, which would have required a reversal if the claim had been properly considered as they were in Powell. In this case the petitioner was not attempting to elude being arrested, infact, he called his parole officer and told him his whereabout when he had been told by his parole officer that a warrant would be issued for his arrest.

Also the state addressed the fact that in Powell the court refers to, United Staes V Cruez,326 F.3d.392,394(3rd.Cir.2003), which was unreasonable in addressing this issue here in this case because, the jury was never given a hint of what type of crime led to the parole in ither Cruz, or Powell. That wasn't the case here, the state sought a conviction for an offense that even the fire inspector testified to saying, there was no evidence that dispute the fact that the fire was not started or caused by an accident, even the petitioner testimony corroborate the fact that the fire was not intentionally started, but the state persisted that because petitioner was a criminal in general, he started the fire, or simply for being on parole caused him to set the fire,

(9)

The appellant counsel correctly pointed out on page (40) of his brief "that the state's case for showing motive and intent relied entirely on appellant's parole status and extraneous offenses or misconduct while of parole." The state also improperly cited Valdez V State,7%6 S.W.2d 162,168(Tex.Crim.App.1989) this case is also inconsistent with the issues in this case as well.

Tex.R.Evid.403, requires the court to examine the danger of confusion of an issue prior to allowing it to be presented to the jury also the misleading that will arise, because looking at the instant case, eighty-percent of the trial was based soley on petitioners parole violations, and the factors surrounding his monitor that failed to prove arson as alleged in the indictment. The state knowingly presented these issue's to "Bolster A Weak" case, and also to sidetrack the juryinto considering factual facts unrelated to proving intent,motive or whether thr fire was purposely started, or anything to do with the issue at hand. This court has determined inseveral case's simular to the issue discussed here, that, "evidence is fairly prejudicial when it has an undue tendency so that a decision be made on an improper basic." See Wiley V State,74 S.W.3d 399,407,n,21(Tex.Crim.App.2002):Wheeler V State 67 S.W.3d 879,888(Tex.Crim.App.2002):Reese V State,33 S.W.3d 238, 240-41(Tex.Crim.App.2000):Mozon V State,991 S.W.2d841,846(Tex.CR. App.1999). This issue was properly persented in the appellant's brief, and because of that petitioner ask the court to incorporate by reference, the arguments advanced to the First Court of Appeals to review, but erred in that endeavor, The approperate remedy here would be to vacate the conviction.

(10)

## GROUND FOR REVIEW NO. THREE

### DID THE TRIAL COURT ERROR REACH TO A LEVEL OF CONSTITUTUINAL DIMENSION BY ALLOWING INSUFFICIENT EVIDENCE REGARDING AN INJURY TO A CHILD FROM OKLAHOMA DURING PUNISHMENT PHASE.

This was presented as ground ten in the appellant court, that involved three documents S/E (20)(21) and (22) That were present- ed during the punishment phase of the trial to show that petit- ioner had allegedly been convicted in Cleveland County, Oklahoma for injury to a child. A hearing was held outside the presence of the jury to determine whether the evidence was admissible. The defense objected on the ground that, (1) exhibit (20) did not provide sufficient independent evidence that appellant was the subject of the exhibit, and (2) exhibits (21&22) were not certif- ied, or authenticated, and therefore were hearsay, but the court allowed the evidence over objection. As pointed out to the first Court of Appeals at page (42) of the appellant's brief, state's exhibit (20) contained no finger-prints, or any other indentifier the stae presented state's exhibits (21&22) to attempt to provide the missing indentifers, but neither states exhibits (21 or 22) were ceritified as required by Texas Rule Of Evidence, Rules901, 902, and Rule 1005. See Also Moses V State, 195 S.W.3d 622, 627(Tex Crim.App.2003):Willover V State, 70 S.W.3d 841, 845(Tex.Crim.App. 2002) The requirement of authentication, or indentification as a matter of law, also as a condiction precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what it's proponent claim. Tex R.Evid.901(a) Counsel also points to the basic of why the state wanted these records presented, which was the fact that the records would

(11)

inflaim the jurys minds against petitioner, because the exhibits reflected a conviction for injury to a child, which was one of the most heinous of all the other other allegations presented, and it cannot be said that it didn't have a substantial, and injurious effect, or influence on the jury's decision to sentence petitioner to life.

TEXAS RULE OF EVIDENCE STATES:

"The contents of an offical record, or document authorized to be record or file and actually recorded or filed,including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct by a witness who compared it with the original."

The stae in this case failed to authenticate the exhibits discretion by allowing this information to be presented to the jury absent the authenication requirements of Tex.R.Evid.1005.

This error was not harmless, it's clear it affected the jury's decision in deciding the sentence, also the state neglected it's obligation to seek justice as opposed to only seeking a win, which violated a ethical duty imposed by the American Bar Association, Moddel Rule Of Professional Conduct Rules, 3.8, and 4-4-1.

The state obtained a conviction on improper evidence, and the court erred by allowing the state to present the improper evidence which was both prejudice, also used to sidetrack the jury.

Based on the issues presented here, also to the First Court Of Appeals, the petitioner's Sixth and Fourteenth amendment was violated, which the only remedy would be to remand for new sentencing.

RESPECTFULLY SUBMITTED,

ROBERT EARL SCHIELE #1850352

(12)

PRAYER

Petitioner respectfully presents this petition, and pray that the court reverse this case, and return to the sentencing court, and a proceeding be held, also that the issues here be resolved in a matter consistent with the U.S. Constitution.

_ROBERT EARL SCHIELE#1850352_

ROBERT EARL SCHIELE#1850352


CERTIFICATE OF SERVICE


I, ROBERT EARL SCHIELE, AN INMATE OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, PRESENTLY IN POLK, COUNTY, CERTIFY THAT ON THIS DAY THE 30th DAY OF March 2015, THAT A TRUE AND CORRECT COPY OF THIS PETITION WAS SENT BY U.S MAIL TO THE POLK COUNTY DISTRICT ATTORNEY'S OFFICE AT 1001 WEST MILL ST. IN LIVINGSTON TEXAS 77351.

ROBERT EARL SCHIELE# 1850352
ALLEN POLUNSKY UNIT
3872 F.M 350 SOUTH
LIVINGSTON, TEXAS 77351

**Opinion issued February 19, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00299-CR

———————————

## ROBERT EARL SCHIELE, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 411th District Court
Polk County, Texas
Trial Court Case No. 22467

## MEMORANDUM OPINION

Appellant Robert Earl Schiele was charged by indictment with felony arson.[1] The indictment's enhancement paragraphs alleged that Schiele previously

---

[1] On March 26, 2013, the Texas Supreme Court ordered this appeal transferred from the Court of Appeals for the Ninth District of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013) (authorizing transfer of cases). We are unaware of any

had been convicted of felony burglary and felony retaliation. A jury rejected Schiele's theory of the case—that the grease fire began accidentally—and found Schiele guilty of the charged offense. After finding the enhancement allegations true, the jury assessed punishment at life in prison. On appeal, Schiele contends that the evidence at trial was legally insufficient to support his conviction. He also contends that the trial court erred by (1) admitting, during the guilt/innocence phase, evidence that he was on parole at the time he committed the charged offense and had previously violated parole conditions and had his parole revoked, and (2) admitting, during the punishment phase, evidence of a prior conviction for injury to a child. We affirm.

## Background

On February 7, 2012, the mobile home that Schiele and his family were renting caught fire and burned to the point that it was not salvageable. Marian Buffington, a Children's Protective Services caseworker, testified that she believed she smelled something burning when she made an unannounced visit to the home on the day of the fire. She arrived at 10:21 a.m. but left shortly thereafter because no one answered her knock on the door. She testified that she smelled something burning as she walked back toward her car and away from the home. But

---

conflict between the precedent of the Court of Appeals of the Ninth District and that of this Court on any relevant issues. *See* TEX. R. APP. P. 41.3.

Buffington did not call 911 because she returned to the front door to check the smell and could not smell anything while standing there.

Approximately three hours later, Jack Ray, a passerby, drove by the home and saw smoke and flames. Ray called 911 to report the fire at 1:29 p.m. He testified that he had driven by the home 15 minutes earlier and had not seen any evidence of fire at that time.

Officer T. Binford of the Polk County Sheriff's Department testified that he was dispatched to the scene around 1:32 p.m. When he arrived five minutes later, Binford looked in a window and saw "a small fire in the kitchen area" that "appeared to be on the top of the stove area." He testified that the house was "filled with smoke" and that no one was inside.

Schiele had not called 911 to report the fire, but he did call Krystal Philp, his parole officer, half an hour after Ray reported the fire. At about 1:58 p.m. on February 7, Schiele left a voicemail for Philp explaining that he had failed to report that morning due to a fire at home. Philp returned Schiele's call that afternoon and made a recording of their conversation, which was played for the jury at trial. In it, Schiele told Philp that his home caught fire that morning. Schiele told Philp that he had put out the fire and then left to meet Philp in Huntsville, as she had instructed the day before, but that he failed to make the meeting because he had to return home when he learned the fire had re-ignited. Schiele told Philp that he had

3

inhaled smoke and left the home and that he was at a nearby bridge. Earlier that day, Philp had requested a warrant for Schiele's arrest based on his failure to report as instructed.

Captain R. Childers of the Polk County Sheriff's Department testified that he arrived at the bridge after another officer had arrested Schiele pursuant to the arrest warrant. Childers testified that Schiele's wife, Bessie Lucas, and two children, were at the bridge with Schiele and the arresting officer. Lucas's bag contained a red expandable folder containing important family documents.

Once Childers and Schiele arrived at the police station, Childers conducted a videotaped interview of Schiele, which was played for the jury. According to Schiele, he was frying lunch—hot pockets, corn dogs, and French fries—in a skillet on the electric stove when a grease fire started. Schiele told Childers that a cabinet caught fire, and that his children ran outside as he fought the fire. Schiele said that he only left the house after he thought that he had extinguished the fire. Schiele, Lucas, and the children then walked to a nearby bridge where they waited for the smoke to clear out of the home. Although Schiele heard sirens within an hour after he left the home, he did not return because he did not "want to deal with the landlady." Schiele surmised that the fire must have blazed back up after he left.

4

During the same recorded interview, Schiele admitted to Childers that Schiele had falsely told Philp over the phone that the fire occurred in the morning. He said that he used the fire as his "excuse" for not reporting to Philp as instructed. Schiele also admitted to Childers that Philp had told him that an arrest warrant would issue if he did report to her in the meeting.

Philp testified that Schiele had failed to report to her on February 6, the day before the fire. When Philp asked Schiele to explain his failure to report, Schiele told her that he left home to go to work, but his boss's truck broke down, and that his other attempts to find a ride to meet Philp were unsuccessful. Philp told Schiele that the records from his electronic monitor showed something different— that Schiele never left home on February 6. Schiele responded that the monitor must not have been working properly. Philp ended the conversation by telling Schiele to report to her in Huntsville at 10:00 a.m. the next day, February 7. She told Schiele that she would request a warrant for his arrest if he did not report to her on February 7 at 10 a.m. She also told him that she would request a warrant for his arrest if further investigation of his electronic monitor records confirmed that Schiele was falsely claiming to have left home on February 6. When Schiele failed to report on February 7 as instructed, Philp submitted a violation report, and a warrant issued around 1:11 p.m. that day.

Jay Barbee, Polk County Fire Marshal and arson investigator, investigated the fire. Barbee testified that the origin of the fire was a pot that had been on the electric stove. Barbee estimated that the burner had to have been on for 30 to 45 to melt the sides of the pot. Barbee testified that he could not determine whether the burner had been left on intentionally and that there was no evidence that an accelerant was used to start the fire.

James Booker, Schiele's parole officer at the time of trial, sponsored the results of Schiele's drug test, which showed that Schiele tested positive for methamphetamine two days after the fire. He also sponsored a document in which Schiele admitted in writing that he used methamphetamine on February 6, the day before the fire.

Booker also told the jury about the records obtained from Schiele's electronic monitoring system. They showed that Schiele's home monitor was unplugged at 8:05 a.m. on February 7, the day of the fire. The system nevertheless continued to monitor Schiele's entry and exit from his home due to a battery backup, about which officers do not tell parolees. Booker testified that the records showed that, on the day of the fire, Schiele left home at 9:29 a.m., returned at 12:51 p.m., and left again at 1:14 p.m, approximately 15 minutes before Ray reported the fire to 911.

Sandra Henderson, who lived nearby, testified that she was the owner of the home, and had rented it to Schiele's wife, Lucas, since September 2011. Henderson testified that Lucas complained about bedbugs and roaches in January 2012. Henderson was willing to pay for an exterminator to treat the home and told Lucas that they needed to schedule the extermination for a time when no one would be home, but she never heard anything else about it.

Although Henderson occasionally had helped Lucas by caring for her children, driving her to life and career skills courses, and helping her organize her important documents into the red folder, Henderson ultimately posted an eviction notice around February 3, 2012, for unpaid rent. Henderson testified that on February 7, the day of the fire, she saw Lucas and her two children walking away from the home at 9:00 a.m., with Lucas carrying a large bag.

## Sufficiency of Evidence

In his first issue, Schiele contends that there was legally insufficient evidence to support his conviction because no direct evidence shows that he intentionally set the fire, and he presented evidence suggesting the fire was an accident and was extinguished when he left the home.

### A.    Standard of Review

"When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to determine whether, based on

that evidence and the reasonable inferences therefrom, a jury was rationally justified in finding guilt beyond a reasonable doubt." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781 (1979)). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Id.* Juries are permitted to draw reasonable inferences from facts as long as each is supported by the evidence presented at trial. *Id.* We determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Id.* at 526 (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). We presume the jury resolved conflicting inferences in favor of the verdict and defer to that determination. *Id.* The standard is the same for both direct and circumstantial evidence cases. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).

## B. Applicable Law

As relevant in this case, a person commits arson if he "starts a fire, regardless of whether the fire continues after ignition, or causes an explosion with intent to destroy or damage any building, habitation, or vehicle knowing that it is located on property belonging to another." TEX. PENAL CODE ANN. § 28.02(a)(2)(D) (West 2011). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his

conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West 2011); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

## C. Analysis

There was no dispute that Schiele's actions caused the grease fire in the mobile home—the central issue in the case was whether he committed the actions with the requisite intent. Intent is most often proven through circumstantial evidence. *See Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled on other grounds*, *Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992); *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). And a jury may infer intent from any facts that tend to prove its existence, such as the acts, words, and conduct of the defendant. *Hernandez*, 819 S.W.2d at 810; *Beltran v. State*, 593 S.W.2d 688, 689 (Tex. Crim. App. 1980); *Dominguez*, 125 S.W.3d at 761.

Here, the jury rationally could have inferred that Schiele intended to cause the fire from several of his actions before and immediately after the fire. First, the jury heard Schiele admit to Childers in the interview that Schiele did not report the fire to 911 despite the fact that the fire was significant enough to spread from the stove to a kitchen cabinet and cause a sore throat from smoke inhalation. Second, the jury heard and saw Schiele admit in the interview that he left the home and did

9

not return, even after hearing sirens approach. The reason he proffered for not returning to the scene was that he did not want to "deal with" Henderson. Third, the jury could have rationally inferred that Schiele attempted to conceal his whereabouts on the day of the fire based on evidence that his electronic monitor was unplugged shortly after 8:00 a.m. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (attempts to conceal incriminating evidence and implausible explanations to the police are probative of wrongful conduct and are circumstances of guilt); *Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (conduct of a defendant subsequent to the alleged commission of a crime that indicates a consciousness of guilt is a circumstance tending to prove that the defendant committed the act with which he is charged); *Ramirez v. State*, No. 14-07-00060-CR, 2008 WL 3931403, at *4 n.5 (Tex. App.—Houston [14th Dist.] Aug. 21, 2008, pet. ref'd) (mem. op., not designated for publication) ("Leaving the scene of a crime indicates a consciousness of guilt.").

The jury likewise rationally could have inferred intent from some of Schiele's words. In his interview with Childers, Schiele admitted that he falsely told Philps that the fire started in the morning, *before* Schiele purported to have left for Huntsville for his 10:00 a.m. meeting with Philp. Schiele admitted to Childers that this was false, because, according to the account that Schiele gave Childers, the fire started at lunch time. Schiele also made a key admission about the *reason*

he told Philp this lie: he was trying to use the fire as an excuse for failing to report to her in Huntsville. This admission could have been damaging in the jury's eyes because it dovetailed with the State's theory of motive: Schiele intentionally set the fire to avoid having to report to Philp because he knew that reporting to Philp would result in his failing a drug test (because he had used methamphetamine on February 6) and having his probation revoked. *See Merritt*, 368 S.W.3d at 526 (while not an element, motive can be a circumstance indicative of guilt); *Temple v. State*, 342 S.W.3d 572, 588 (Tex. App.—Houston [14th Dist.] 2010) (lying is a circumstance of guilt), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013).

Finally, Schiele's account of when he left the home likewise could have been viewed by the jury as words tending to show intent. Schiele told Childers that approximately one hour passed between the time he and his family left home and the time he heard sirens. But his monitor showed that he left only 14 minutes before Ray reported the fire, and the evidence showed that authorities responded to the scene within 9 minutes of Ray's report. Based on this evidence, the jury rationally could have inferred that Schiele was untruthful and attempting to conceal his whereabouts at the time of the fire. *See Merritt*, 368 S.W.3d at 527 (considering evidence that appellant's recollection of activities on evening of arson was contradicted by other evidence in sufficiency analysis).

Schiele argues that the evidence was insufficient because Barbee testified that he could not determine whether the fire was set intentionally, the State's case was based only upon circumstantial evidence, and there was some evidence that he started the fire accidentally. But circumstantial evidence is just as probative as direct evidence and, in circumstantial cases, "it is not necessary that every fact and circumstance 'point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances.'" *See Temple*, 390 S.W.3d at 359 (quoting *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)). Likewise, while Schiele correctly points out that there is some evidence that the fire was accidental, we rely on the jury to resolve conflicts in the evidence, and this is especially so in the context of credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (we afford almost complete deference to jury's determinations of credibility); *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (appellate courts resolve any inconsistencies in the evidence in favor of the verdict).

Viewing the evidence in the light most favorable to the verdict, as we must, we conclude that a rational jury could have convicted Schiele of arson. Accordingly, we hold that the evidence was legally sufficient to support the judgment. *See Orr v. State*, 306 S.W.3d 380, 394 (Tex. App.—Fort Worth 2010,

12

no pet.) (evidence sufficient to support conviction for arson where appellant had motive, was present at the time of the fire, and gave implausible explanations about fire); *Fitts v. State*, 982 S.W.2d 175, 186 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (presence at the scene before the fire coupled with motive and opportunity is evidence tending to establish arson); *Krebsbach v. State*, 962 S.W.2d 728, 734 (Tex. App.—Amarillo 1998, pet. ref'd) (evidence sufficient to support murder conviction where appellant had motive to set the fire, was present in home as fire began, and made inconsistent statements about how she discovered fire).

We overrule Schiele's first issue.

## Evidentiary Issues in Guilt/Innocence

In his second through ninth issues, Schiele contends that the trial court abused its discretion in admitting evidence of several of Schiele's bad acts. Specifically, Schiele argues that the trial court erred in admitting evidence that Schiele (1) was on parole, (2) failed to report to his parole officer the day before the fire and the day of the fire, (3) violated his parole by using a controlled substance the day before the fire and by disconnecting his electronic monitoring device the day of the fire, (4) lied to his parole officer about why he failed to report the day before the fire and the day of the fire, (5) was required to attend anger

management classes, and (6) had violated parole obligations and had his parole revoked before February 6, 2012.

## A. Standard of Review

We review a trial court's evidentiary rulings for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse a trial court's ruling on evidentiary matters unless the decision was outside the zone of reasonable disagreement. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). If the trial court's ruling can be justified on any theory of law applicable to that ruling, the ruling will not be disturbed. *De La Paz*, 279 S.W.3d at 344 (citing *Sewell v. State*, 629 S.W.2d 42, 45 (Tex. Crim. App. 1982) ("When a trial court's ruling on the admission of evidence is correct, although giving a wrong or insufficient reason, this Court will not reverse if the evidence is admissible for any reason.")).

## B. Applicable Law

Evidence of extraneous crimes, wrongs, or acts is not admissible at the guilt-innocence phase "to prove the character of a person in order to show action in conformity therewith" but is admissible to prove other matters, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" if the accused is given reasonable notice of the State's intent to introduce the evidence. TEX. R. EVID. 404(b) (extraneous evidence must have

probative value beyond character conformity to be admissible). The Court of Criminal Appeals has held that evidence of an appellant's parole status is properly admitted under Rule 404(b) to show motive. *Powell v. State*, 189 S.W.3d 285, 289 (Tex. Crim. App. 2006) (evidence defendant was on parole was admissible under Rule 404(b) for purpose of establishing defendant's motive for evading arrest). Further, rebuttal of a defensive theory is also "one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b)." *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).

"However, even if the evidence is relevant, and the purpose for which it is being offered is permissible under Rule 404(b), it may still be excluded by the trial court under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1990) (en banc)). Under a Rule 403 analysis, we consider: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already

admitted." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). The trial court is presumed to have conducted the proper balancing test if it overrules a 403 objection, regardless of whether it conducted the test on the record. *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997).

## C.    Analysis

Here, the State offered the challenged evidence to prove that Schiele had a motive to and did set the fire intentionally. The fact that Schiele was on parole, failed to report to his parole officer on February 6 and February 7, was not truthful about why he failed to report, tested positive for methamphetamine on February 9, which he admitted to using on February 6, and disconnected his electronic monitor on February 7 are all circumstances that demonstrate that Schiele had a motive to set the fire. *See Merritt*, 368 S.W.3d at 527 (while not an element, motive can be a circumstance indicative of guilt). Accordingly, the trial court did not err in concluding that this evidence was probative and admissible under Rule 404(b). *See* TEX. R. EVID. 404(b); *Powell*, 189 S.W.3d at 289 (evidence of appellant's parole was admissible to show motive for evading arrest); *Valdez v. State*, 776 S.W.2d 162, 168 (Tex. Crim. App. 1989) (evidence of an outstanding federal parole warrant was admissible on the issue of defendant's motive for shooting a police officer).

16

We also conclude that the trial court did not abuse its discretion in overruling Schiele's Rule 403 objection with respect to some of the challenged evidence. Specifically, evidence that Schiele was on parole, failed to report to Philp on February 6 and February 7, used methamphetamine on February 6, disconnected his electronic monitor on February 7, and lied to Philp about why he failed to report was admissible under *Gigliobianco*.

The first two factors—the probative value of the evidence and the State's need for the evidence—weigh strongly in favor of admissibility. The evidence that Schiele was on parole at the time of the offense, failed to report, used methamphetamine on February 6, disconnected his electronic monitor, and lied about why he failed to report on February 6 is probative of motive and intent. The State needed the evidence to demonstrate why Schiele would have deliberately set his home on fire. *See Powell*, 189 S.W.3d at 289 ("there was reason to believe that the State had a significant need for the evidence" that appellant was on parole to show motive and contradict other evidence).

Under the third factor, we examine the unfair prejudice, that is, the tendency of the evidence to suggest decision on an improper basis. *Gigliobianco*, 210 S.W.3d at 641. Evidence might have this tendency "if it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Id.* Here, the evidence about Schiele's parole likely harmed Schiele,

but the risk of *unfair* prejudice was minimized somewhat because the jury did not learn the offense for which Schiele was on parole. *See Powell*, 189 S.W.3d at 289 (risk of undue prejudice was minimized by the fact that jury was not told what crime led to parole status). This factor weighs against admissibility.

In considering the fourth and sixth factors, we examine the tendency of the evidence to confuse or distract the jury from the main issues and the time required to develop the evidence. *Gigliobianco*, 210 S.W.3d at 641. "Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." *Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007). Here, the amount of time the State devoted to developing the evidence was not insignificant. The State presented the evidence through the live testimony of four witnesses—Schiele's parole officers, Booker and Philp, the Polk County Sheriff's Office dispatcher, Terry Valka, and the officer who conducted Schiele's interview, Captain Childers. The witnesses' testimony about Schiele's parole spanned approximately 50 pages of the 118-page reporter's record of the guilt and innocence phase of the trial. The State also presented a recording of Schiele's eight-minute phone call with Philp and the interview by Childers. The interview video lasted approximately 24 minutes and the portions related to the parole lasted less than five minutes. Because a significant portion of the evidence related to the challenged evidence regarding

18

parole, we conclude that the fourth and sixth factors weigh against admissibility. *Cf. Blackwell v. State*, 193 S.W.3d 1, 18 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (factor neutral and favored neither admissibility nor exclusion of evidence where four witnesses' testimony of extraneous offenses was not "unduly lengthy").

Under the fifth factor, we weigh any tendency of the evidence to be given undue weight by a jury that has not been properly equipped to evaluate the probative force of the evidence. *Gigliobianco*, 210 S.W.3d at 641. Here, the charge contained a limiting instruction.[2] Absent evidence to the contrary, a jury is presumed to follow the instruction set forth in the court's charge. *Herrera v. State*, 11 S.W.3d 412, 415–16 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). Further, the testimony relating to Schiele's parole, interview video, and phone call recording were not scientific or technical in nature. Thus, "nothing suggests that the jury was not equipped to evaluate the probative force" of the evidence, and we conclude this factor weighs in favor of admissibility. *See Moreno v. State*, 409 S.W.3d 723, 731 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (fifth factor

---

[2] The charge instructed: "[E]ven if you find that the State has proven, beyond a reasonable doubt, the defendant's guilt of these other offenses, wrongs, or acts, if any, you may only consider such evidence as evidence of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, in relation to the offense for which defendant is on trial or to rebut a defensive theory of the case, and you may not consider these offenses, wrongs, or acts, if any, for any other purpose."

weighs in favor of admissibility where evidence was not technical or scientific in nature and was "comprehensible by laypeople").

In support of his argument that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice under Rule 403, Schiele cites *Powell v. State*, 151 S.W.3d 646, 650–54 (Tex. App.—Waco 2004), *rev'd*, 189 S.W.3d 285. But the Court of Criminal appeals reversed that Waco Court of Appeals decision as to the Rule 403 balancing test and held that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. *See Powell*, 189 S.W.3d at 287–90. Accordingly, *Powell* does not support Schiele's argument. *See id.*

We conclude that three of the *Gigliobianco* factors weigh in favor of admissibility while three weigh against it. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the following challenged evidence: that Schiele was on parole, failed to report to Philp on February 6 and February 7, used methamphetamine on February 6, disconnected his electronic monitoring device on February 7, and lied to Philp about why he failed to report on February 6 and February 7. *See Powell*, 189 S.W.3d at 289 (probative value of evidence was not substantially outweighed by danger of unfair prejudice where jury was not informed of crime for which appellant was on parole and State had significant need

for evidence); *Moses*, 105 S.W.3d at 627 (trial court's admission of extraneous offense evidence is reviewed for abuse of discretion).

Our analysis of the remaining challenged evidence—that Schiele missed an anger management class on February 6 and had his parole revoked before February 6, 2012—is different. With respect to this evidence, we conclude that even if it was error to admit it, the error would have been harmless in light of the other admissible evidence relating to parole discussed above.

The jury considered evidence that Schiele was on parole at the time of the fire, failed to report to Philp on February 6 and February 7, used methamphetamine on February 6, disconnected his electronic monitoring device on February 7, and lied to Philp about why he failed to report on February 6 and February 7. We have held that the admission of this evidence was not an abuse of discretion. In light of this other properly admitted evidence relating to parole, it is unlikely that the additional fact that Schiele missed an anger management class and previously had his parole revoked would impact the jury's decision. This is particularly true in light of Philp's direct testimony that she warned Philp on February 6 that failing to report on February 7 would lead her to request an arrest warrant. *See Davis v. State*, 203 S.W.3d 845, 853 (Tex. Crim. App. 2006) (appellate court must determine whether erroneous admission of inadmissible hearsay "moved the jury from a state of non-persuasion to one of persuasion of a particular issue"); *Motilla*

*v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (harmless error if jury's decision likely was not adversely affected by the error); *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000) (reviewing court considers probable impact of error on jury in light of existence of other evidence).

We overrule Schiele's second, third, fourth, fifth, sixth, seventh, eighth, and ninth issues.

### Admissibility of Prior Conviction in Punishment Phase

In his tenth issue, Schiele contends that the trial court erred in admitting, during the punishment phase, evidence of a prior conviction for injury to a child because the State failed to properly link the conviction to Schiele.

### A. Standard of Review and Applicable Law

To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) the prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex. Crim. App. 2007). "No specific document or mode of proof is required to prove these two elements." *Id.* "There is no 'best evidence' rule in Texas that requires the fact of a prior conviction be proven with any document, much less any specific document." *Id.* The State may prove these two elements by documentary proof, such as a judgment, that contains sufficient information to establish both the

existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 922.

The trier of fact considers the totality of the evidence admitted and attempts to fit the evidentiary pieces of the puzzle together, weighing each piece's credibility. *Id.* at 923. "Regardless of the type of evidentiary puzzle pieces the State offers to establish the existence of a prior conviction and its link to a specific defendant, the trier of fact determines if these pieces fit together sufficiently to complete the puzzle." *Id.* If the two necessary elements "can be found beyond a reasonable doubt, then the various pieces used to complete the puzzle are necessarily legally sufficient to prove a prior conviction." *Id.*

## B.    Analysis

During the punishment phase, the State offered exhibits to prove its enhancement allegations—a prior conviction for the felony offenses of burglary and retaliation—as well as to prove Schiele's prior conviction for injury to a child in Oklahoma. In support of Schiele's prior conviction for injury to a child, the State offered: (1) a copy of the case summary, (2) a copy of the "plea of guilty summary of facts," and (3) a copy of the judgment.

Schiele objected and argued that the copy of the case summary did not contain a fingerprint or thumbprint, the plea record was not a certified copy and

contained no thumbprint, and that the copy of the judgment was not a certified copy, was not a public record, and contained no thumbprint.

But "[n]o specific document or mode of proof is required to prove these two elements," *see Flowers*, 220 S.W.3d at 921, and we conclude that the trial court did not err in admitting the evidence about which Schiele complains. The copy of the case summary for the injury to a child case contains Schiele's name, date of arrest, charged offense, judicial cause number, and disposition. The plea record contains Schiele's name, birth date, the same judicial cause number as the case summary, and the last four digits of Schiele's social security number. The judgment contains Schiele's name, birth date, the same judicial cause number as the case summary and plea record, and the same last four digits of Schiele's social security number as the plea record. Further, Lucas, Schiele's wife, testified that Schiele was arrested for injury to a child in Oklahoma and that the plea record states the charged offense and the date of the arrest, which matches the date on the case summary. Additionally, the trial court admitted penitentiary packets ("pen packs") containing documents from the Texas Department of Criminal Justice. The pen packs include documents relating to Schiele's other prior convictions and include Schiele's name and birth date, which match the case summary, plea record, and judgment for his injury to a child conviction. Based on the totality of the evidence, we hold that the State produced evidence from which the jury rationally could link Schiele to the

injury to a child conviction beyond a reasonable doubt. *See Flowers*, 220 S.W.3d at 921 (certified copy of computer printout from county clerk setting out prior conviction with cause number and appellant's name, date of birth, address, and social security number matching exhibit containing appellant's official driver's license record was sufficient to prove existence of appellant's prior conviction); *Orsag v. State*, 312 S.W.3d 105, 115 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (factfinder considers totality of evidence to determine whether State proved prior conviction beyond a reasonable doubt). Accordingly, the evidence is legally sufficient to prove the prior convictions and enhancement allegation.

We overrule Schiele's tenth issue.

## Conclusion

We affirm the trial court's judgment.

Rebeca Huddle
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).