

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00146-CR
_____

SHAWN LYNN JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 413th District Court
Johnson County, Texas
Trial Court No. DC-F202200318

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Johnson County[1] jury convicted Shawn Lynn Johnson of manslaughter with a deadly weapon and two counts of aggravated assault with a deadly weapon and found the State's two enhancement allegations to be true. In accordance with the jury's recommendation, the trial court sentenced Johnson to life in prison for each of the three convictions.

On appeal, Johnson argues that the trial court erred by (1) permitting a witness to testify in violation of Rule 614 and (2) denying his motion to suppress blood evidence. Because we find that the trial court (1) was within its discretion to allow the witness to testify during the punishment phase and (2) did not err in denying his motion to suppress, we affirm the trial court's judgment.

## I.    Factual and Procedural Background

On the morning of October 12, 2019, Brooklyn Oquendo was driving on County Road 915 in rural Johnson County, Texas. Oquendo had two passengers with her at the time. As they were traveling down the road, they crested a hill. At that point, they saw a black car traveling towards them. As the black car came over the hill, it veered off the road and hit a tree. Three people—Matthew Warner, Amy Wright, and Shawandasee Begley—were ejected from the black car during the collision. When emergency personnel arrived on the scene, they found Johnson in the driver's seat of the black car, and Warner was pronounced dead at the scene. Wright,

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We are unaware of any conflict between precedent of the Tenth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Begley, and Johnson were transported to area hospitals, where they received treatment for their injuries and ultimately survived.

Johnson was eventually transferred to John Peter Smith Hospital in Fort Worth, where Trooper Chasstin Terry obtained a sample of Johnson's blood. Testing of the blood sample revealed amphetamine at a level of .09 milligrams per liter, methamphetamine at a level of .45 milligrams per liter, and THC metabolites at a level of 85 nanograms per liter.

A couple of months later, Johnson was arrested. On March 31, 2022, he was indicted for: (1) manslaughter with a deadly weapon, (2) two counts of intoxication assault, and (3) two counts of aggravated assault with a deadly weapon. The indictment alleged two felony enhancement paragraphs.

Before voir dire, the State waived the two counts of intoxication assault. Johnson entered a plea of not guilty to the remaining three counts of the indictment. On September 15, 2022, the jury found Johnson guilty on all three counts in the indictment and also found the deadly weapon notice to be true as to the charge of manslaughter. For each of the three convictions, Johnson was sentenced to life in prison and assessed a $10,000.00 fine.

## II. There Was No Error in Allowing Vicki Garnand to Testify Over Johnson's Rule 614 Objection

In his first point of error, Johnson contends that the trial court erred in allowing Garnand to testify in violation of Rule 614 of the Texas Rules of Evidence.

Rule 614 states that, "[a]t a party's request[,] the court must order witnesses excluded so that they cannot hear other witnesses' testimony." TEX. R. EVID. 614. Rule 614 is commonly referred to as "the Rule." The purpose of the Rule is to prevent witnesses from changing their

testimony based on the testimony of another. *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). Additionally, it improves the jury's ability to decipher false testimony by revealing inconsistencies in witnesses' testimony. *White v. State*, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.) (discussing the Rule when found at Rule 613 of the Texas Rules of Criminal Evidence).

It is within the trial court's discretion to allow the testimony of a witness who has violated the Rule. *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996) (per curiam).

> [T]he ruling of the trial court on an objection to a witness testifying when he has remained in the courtroom after having been placed under the "rule" may not be relied upon as a ground for reversal unless an abuse of discretion is shown; and until the contrary has been shown, it will be presumed on appeal that such discretion was properly exercised.

*Id.* (citing *Valdez v. State*, 776 S.W.2d 162, 170 (Tex. Crim. App. 1989)). In reviewing a trial court's decision to allow testimony after an alleged violation of the Rule, we analyze "(a) whether the witness actually conferred with or heard testimony of other witnesses, and (b) whether the witness's testimony contradicted testimony of a witness from the opposing side or corroborated testimony of a witness he had conferred with or heard." *Id.* (citing *Webb*, 766 S.W.2d at 240).

Here, after the jury was seated and sworn in, Johnson invoked the Rule. The State asked the trial court whether a witness, who would be part of the punishment phase but not the guilt/innocent phase, would be excluded under the Rule. The State requested that Warner's mother, Vicki Garnand, be allowed to remain in the courtroom during the guilt/innocence phase of the trial and still be allowed to testify during the punishment phase. Johnson objected, arguing

4

that, under Article 36.03 of the Texas Code of Criminal Procedure, "the Judge may exclude a witness if the trial court finds that the testimony of [that] witness would be materially affected if the witness heard other testimony at trial." Johnson contended that allowing Garnand to watch the entire trial was likely to have a material impact on her testimony. The trial court then showed Garnand a copy of the State's fourth amended witness list to determine if she knew anyone on it. Garnand stated that she only knew two witnesses on the list, Wright and Begley.

After hearing argument from counsel, the trial court overruled Johnson's objection and admonished Garnand not to speak with anyone about the case or what she had heard in the courtroom. The trial court then allowed Garnand to remain in the courtroom for the guilt/innocence phase of the trial and still testify during the punishment phase and found that "the victim in this particular case would include the mom of the decedent." During the punishment phase of the trial, Garnand provided victim-impact testimony and testified regarding her son's childhood, problems in school, his multiple encounters with law enforcement, and the issues he had while on parole.

In *Bell*, the Texas Court of Criminal Appeals acknowledged that a witness violated the court's Rule 614 admonishments and that the testimony of that witness "could potentially have been affected by having heard testimony from appellant's punishment witnesses." *Bell*, 938 S.W.2d at 50. Even so, the court found that there was no evidence that the "testimony [the witness] heard influenced his own testimony" and held that the trial court did not abuse its discretion in permitting the witness to testify because his testimony and opinions "clearly were based upon his own experiences and investigations," "were not based upon any testimony from

5

appellant's witnesses at punishment," and did not contradict any testimony from the witnesses he observed. *Id.* at 51.

Here, as in *Bell*, Garnand's testimony was based on her personal knowledge and observations, rather than upon testimony from witnesses during the guilt/innocence phase. She did not testify regarding anything she heard during the guilt/innocence phase of the trial and neither mentioned nor contradicted any other witnesses' testimony. Moreover, the record does not demonstrate that testimony from the witnesses during guilt/innocence influenced Garnand's testimony in any way. For these reasons, we overrule Johnson's first point of error.

## III. The Trial Court Did Not Err in Denying Johnson's Motion to Suppress

In his final point of error, Johnson argues that the trial court erred in denying his motion to suppress the evidence obtained as a result of the blood draw. Specifically, Johnson contends that his consent was involuntary because Terry failed to read him the DIC-24 warnings from Section 724.015 of the Texas Transportation Code.

We "review[] a trial court's ruling on a motion to suppress evidence" under "a bifurcated standard of review." *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do "not engage in [our] own factual review." *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). We give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not "based on an evaluation of credibility and demeanor" and on (2) "application of law to fact questions" that "turn[] on an

6

evaluation of credibility and demeanor." *Amador*, 221 S.W.3d at 673 (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex. Crim. App. 2006)). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Id.*

"In reviewing a trial court's ruling on a motion to suppress, [we] must view the evidence in the light most favorable to the trial court's ruling." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "[T]he trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony" at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). "[W]hen the trial court makes explicit fact[-]findings," we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact-findings. *Kelly*, 204 S.W.3d at 818–19. We "then review[] the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record [explicit] findings are also dispositive of the legal ruling." *Id.* at 818.

When "the trial court makes no express findings of fact," an appellate court must "presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). An appellate court will sustain the trial court's decision if it concludes that "the decision is correct on any theory of law applicable to the case." *Ross*, 32 S.W.3d at 856.

On May 13, 2022, the trial court heard Johnson's motion to suppress the evidence from the blood draw. Trooper Kerry Roberson with the Texas Department of Public Safety testified that he instructed Terry to go to the hospital where Johnson was being treated and attempt to

7

obtain a consensual blood draw from Johnson to check for intoxication. Roberson testified that he did not read Johnson the DIC-24 statutory warnings, did not mirandize, and did not arrest Johnson.

Terry testified that he arrived at the hospital, and after identifying himself as law enforcement, he spoke with Johnson about the car crash. He told Johnson that he was not under arrest. Terry stated, "You are not going to jail. You're at the hospital right now." Johnson was "very cordial," and he answered Terry's questions. Terry testified that Johnson was "coherent and understanding, knew who [Terry] was and why [he] was there."

Terry asked Johnson if he wanted to "consensually" provide a blood sample. Johnson responded that he was "scared of needles." Terry started to walk away and stated that he would "go get a warrant," but Johnson said, "No, no, I didn't understand. I'm willing to." Based on that exchange, Terry believed that he had Johnson's consent and that Johnson had a "good, intelligible understanding" of what Terry was requesting and what was going on. Johnson never refused to provide a blood sample.

As Terry was "completing the consensual paperwork" for the blood draw, Johnson's mother entered the hospital room and stayed with Johnson. After asking Johnson about it, Terry signed the consent form on Johnson's behalf because "[Johnson] had a lot of face trauma," he had a spine stabilizer on, he had "medical stuff on his fingers," and he would not "be able to see what he was signing." Terry found a nurse who subsequently drew a sample of Johnson's blood. Terry left the hospital and gave the sample to Roberson.

At no point during the encounter with Johnson did Terry read Johnson the DIC-24 warnings. Terry testified that, during the exchange, Johnson was not under arrest, that he could have refused medical treatment and left the hospital at any time, and that he was "free to go."

After a hearing, the trial court denied Johnson's motion to suppress. The trial court found that Johnson was not under arrest, that the DIC-24 warnings were not required, and that Johnson clearly gave voluntary consent to the blood draw.

On appeal, Johnson contends that the DIC-24 warnings were required and that Terry's failure to read the warnings to him rendered his consent involuntary. Johnson does not challenge the trial court's other findings with regard to the motion to suppress.

Section 724.015 of the Texas Transportation Code, also known as the DIC-24 warnings, states that:

> (a)     Before requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing that:
>
> > (1)     if the person refuses to submit to the taking of the specimen, that refusal may be admissible in a subsequent prosecution;
> >
> > (2)     if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended, whether or not the person is subsequently prosecuted as a result of the arrest, for not less than 180 days;
> >
> > (3)     if the person refuses to submit to the taking of a specimen, the officer may apply for a warrant authorizing a specimen to be taken from the person;
> >
> > (4)     if the person is 21 years of age or older and submits to the taking of a specimen designated by the officer and an analysis of the specimen shows the person had an alcohol concentration of a level specified by Chapter 49, Penal Code, the person's license to operate a motor vehicle

9

will be automatically suspended for not less than 90 days, whether or not the person is subsequently prosecuted as a result of the arrest;

(5)     if the person is younger than 21 years of age and has any detectable amount of alcohol in the person's system, the person's license to operate a motor vehicle will be automatically suspended for not less than 60 days even if the person submits to the taking of the specimen, but that if the person submits to the taking of the specimen and an analysis of the specimen shows that the person had an alcohol concentration less than the level specified by Chapter 49, Penal Code, the person may be subject to criminal penalties less severe than those provided under that chapter;

(6)     if the officer determines that the person is a resident without a license to operate a motor vehicle in this state, the department will deny to the person the issuance of a license, whether or not the person is subsequently prosecuted as a result of the arrest, under the same conditions and for the same periods that would have applied to a revocation of the person's driver's license if the person had held a driver's license issued by this state;

(7)     the person has a right to a hearing on the suspension or denial if, not later than the 15th day after the date on which the person receives the notice of suspension or denial or on which the person is considered to have received the notice by mail as provided by law, the department receives, at its headquarters in Austin, a written demand, including a facsimile transmission, or a request in another form prescribed by the department for the hearing; and

(8)     if the person submits to the taking of a blood specimen, the specimen will be retained and preserved in accordance with Article 38.50, Code of Criminal Procedure.

(b)     If a person consents to the request of an officer to submit to the taking of a specimen, the officer shall request the person to sign a statement that:

(1)     the officer requested that the person submit to the taking of a specimen;

(2)     the person was informed of the consequences of not submitting to the taking of a specimen; and

(3)     the person voluntarily consented to the taking of a specimen.

TEX. TRANSP. CODE ANN. § 724.015.  However, "[a]n officer requesting a blood sample must give statutory warnings, which are contained in the DIC-24 form, only if the person is under arrest." *Porter v. State*, No. 2-05-150-CR, 2005 WL 3343867, at *3 (Tex. App.—Fort Worth Dec. 8, 2005, no pet.) (mem. op.); *see also Fienen v. State*, No. 06-11-00087-CR, 2011 WL 4916618, at *2 (Tex. App.—Texarkana 2011) (mem. op.), *aff'd by* 390 S.W.3d 328 (Tex. Crim. App. 2012) (Section 724.015 warnings must be given "orally and in writing" to a "person arrested").  Section 724.002 states, "The provisions of this chapter that apply to suspension of a license for refusal to submit to the taking of a specimen (Sections 724.013, 724.015, and 724.048 and subchapters C and D) apply only to a person arrested for an offense involving the operation of a motor vehicle . . . ."  TEX. TRANSP. CODE ANN. § 724.002 (footnote omitted) (citations omitted).  In fact, by their terms, the implied consent laws of Chapter 724 of the Transportation Code apply only to persons arrested.  *See* TEX. TRANSP. CODE ANN. § 724.011(a) ("[i]f a person is arrested . . . the person is deemed to have consented"), § 724.012(a) ("specimens . . . may be taken if the person is arrested"); *see also Sandoval v. State*, 17 S.W.3d 792, 795 (Tex. App.—Austin 2000, pets. ref'd) (implied consent warnings must be given to a person arrested before requesting a specimen); *Elliott v. State*, 908 S.W.2d 590, 593 (Tex. App.—Austin 1995, pet. ref'd) (per curiam).

Here, it is undisputed that Johnson consented to the blood draw.  The trial court found that he was not under arrest at the time, and Johnson does not challenge that finding on appeal.  Therefore, because Johnson was not under arrest, Terry was not required to give him the DIC-24

warnings before asking for consent to obtain a blood sample.  Accordingly, the trial court did not

err in denying Johnson's motion to suppress, and we overrule this point of error.

## IV.     Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     June 28, 2023
Date Decided:       August 28, 2023

Do Not Publish